MEF:ALW/DD/NBP/FA:alw
F.#1999R01685

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

FRANK CAMPANELLA,
    also known as "Frank Campy,"
JOHN J. DEROSS,
    also known as "Jackie,"
DOMINICK DIONISIO,
    also known as "Black Dom,"
ALPHONSE T. PERSICO,
    also known as "Allie Boy"
    and "the Kid," and
ANTHONY SAINATO,

               Defendants.

- - - - - - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 01-0056 (S-5)(RR)
(T. 18, U.S.C., §§ 664, 894,
982, 1341, 1951, 1955,
1956(h), 1962(c), 1962(d),
1963, 2 and 3551 et seq.;
T. 21, U.S.C., §§ 846
and 841(b)(1)(B)(vii)).

THE GRAND JURY CHARGES:

    At all times relevant to this superseding indictment, unless otherwise indicated:

The Colombo Family Enterprise

    1.   The members and associates of the Colombo organized crime family of La Cosa Nostra (the "Colombo family") constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The Colombo family engaged in, and its activities affected, interstate and foreign commerce. The Colombo family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.     The Colombo family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Colombo family, who were referred to as "soldiers," "friends of ours," "good fellows" and "buttons," and associates of the Colombo family.

3.     Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection.  In return, the captain received a share of the earnings of each of the crew's members and associates.

4.     Above the captains were the three highest-ranking members of the Colombo family.  The head of the Colombo family was known as the "boss."  He was assisted by an "underboss" and a counselor, who was known as the "consigliere."  When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Colombo family was often appointed to that position in an acting capacity.

5.     The boss, underboss and consigliere of the Colombo family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and

associates of the Colombo family. In return for their
supervision and protection, the boss, underboss and consigliere
received part of the illegal earnings of each crew.

6. The Colombo family was part of a nationwide
criminal organization known by various names, including the
"mafia" and "La Cosa Nostra," which operated through entities
known as "families." The ruling body of this nationwide
organization was known as the "commission," the members of which
have at various times included the bosses of the five New York
City-based families, to wit: the Bonanno, Colombo, Gambino,
Genovese and Luchese organized crime families.

7. From time to time, the Colombo family would
propose a list of associates to be "made," that is, to become
members of the Colombo family. The list would be circulated to
the other families based in New York City. Upon becoming "made,"
each member would take an oath of "omerta," vowing never to
reveal any information about the Colombo family, its members or
associates.

8. At various times relevant to this superseding
indictment, the defendant ALPHONSE T. PERSICO was a soldier, a
captain, and the acting boss of the Colombo family; the defendant
JOHN J. DEROSS was a soldier, a captain, and the underboss of the
Colombo family; and the defendants FRANK CAMPANELLA, DOMINICK
DIONISIO and ANTHONY SAINATO were associates of the Colombo
Family.

9.   At various times relevant to this superseding indictment, William Cutolo was a captain and a member of the administration of the Colombo Family, and his crew members included the defendants FRANK CAMPANELLA and DOMINICK DIONISIO. Cutolo's crew also included Joseph Anemone, Ronald Califano, Michael T. Donato, Ralph Jude Guccione, Enrico Locascio, Enrico Monteperto, Joseph Anthony Petillo, Paulo Rizzuto, Silvio Salome, and others.  On May 26, 1999, William Cutolo disappeared.  After May 26, 1999, the defendant JOHN J. DEROSS took control of Cutolo's crew and its activities.

The Purposes, Methods and Means of the Colombo Family Enterprise

10.   The principal purpose of the enterprise was to generate money for its members and associates.  This purpose was implemented by members and associates of the enterprise through various criminal activities affecting interstate and foreign commerce, including drug trafficking, illegal gambling, loansharking, extortion, securities fraud and money laundering. The members of the enterprise furthered its criminal activities by, among other methods and means, threatening economic injury and threatening and actually using physical violence.

11.   Members and associates of the Colombo family engaged in conduct designed to prevent government detection of their identities, their illegal activities, and the location of the proceeds of those activities.

12.   Members and associates of the enterprise often

coordinated street-level criminal activity, such as drug trafficking, loansharking, extortion and gambling, with members and associates of other organized crime families, including the Bonnano, Gambino, Genovese and Luchese organized crimes family of La Cosa Nostra.

<u>Embassy Terrace</u>

13.   Embassy Terrace, Inc., doing business as NCT Catering, Inc., Clifton Catering, LLC, and 402 Realty Corporation (collectively, "Embassy Terrace"), owned and operated a catering hall located at 401-403 Avenue U, Brooklyn, New York, together with a restaurant and parking lot located at 402 Avenue U, Brooklyn, New York.  Vito Salerno was the President and the sole shareholder of Embassy Terrace.

<u>Suffolk Alpa Trucking</u>

14.   The defendants FRANK CAMPANELLA and ANTHONY SAINATO operated and managed a trucking company, which was called, at various times, Marietta Trucking Corp., Eastern Transport Inc., Suffolk Alpa Corp., Cordial Trucking, Inc. and Tony's Trucking ("Suffolk Alpa").  Suffolk Alpa was located at 325 Underhill Road, Syosset, New York.  Suffolk Alpa provided trucking services to Gallo Wine Distributors/Premier Wine & Spirits, Inc. ("Gallo Wine"), which was a wine and alcohol distributor located at 345 Underhill Road, Syosset, New York.

COUNT ONE
(Racketeering)

15.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

16.   In or about and between November 1993 and April 19, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid," and ANTHONY SAINATO, together with others, being persons employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity.  The defendants participated in the affairs of the enterprise through the commission of multiple racketeering acts, as set forth below in paragraphs 17 through 35.

RACKETEERING ACT ONE
(Loansharking Conspiracy)

17.   The defendants named below committed the following acts, either one of which alone constitutes the commission of racketeering act one:

A.   Loansharking Conspiracy

18.   In or about and between November 1993 and October

1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, JOHN J. DEROSS, DOMINICK DIONISIO and ALPHONSE T. PERSICO, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894.

B.   Money Laundering Conspiracy

19.   In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, JOHN J. DEROSS, DOMINICK DIONISIO and ALPHONSE T. PERSICO, together with others, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit: the transfer of United States currency, involving property used to conduct and facilitate specified unlawful activity, to wit: loansharking, with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A), in violation of Title 18, United States Code, Section 1956(h).

RACKETEERING ACT TWO
(Money Laundering Conspiracy:  Embassy Terrace)

20.   On or about and between May 26, 1999 and June 2000, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants JOHN
J. DEROSS and ALPHONSE T. PERSICO, knowing that the property
involved in financial transactions represented the proceeds of
some form of unlawful activity, knowingly and intentionally
conspired to conduct and attempt to conduct financial
transactions affecting interstate commerce, to wit: the transfer
of United States currency, which transactions in fact involved
the proceeds of specified unlawful activity, to wit: extortion,
knowing that such financial transactions were designed in whole
and in part to conceal and disguise the nature, location, source,
ownership and control of such proceeds, in violation of Title 18,
United States Code, Section 1956(a)(1)(B)(i), in violation of
Title 18, United States Code, Section 1956(h).

RACKETEERING ACT THREE
(Conspiracy to Distribute Marijuana)

21.   In or about and between January 1999 and May 1999,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant DOMINICK
DIONISIO, together with Enrico Monteperto and others, knowingly
and intentionally conspired to distribute a substance containing
marijuana, a Schedule I controlled substance, in violation of
Title 21, United States Code, Section 846.

RACKETEERING ACT FOUR
(Conspiracy to Distribute MDMA)

22.   In or about and between November 1993 and 1995,
both dates being approximate and inclusive, within the Eastern

District of New York and elsewhere, the defendant DOMINICK
DIONISIO, together with others, knowingly and intentionally
conspired to distribute MDMA, a Schedule I controlled substance
in violation of Title 21, United States Code, Section 846.

### RACKETEERING ACT FIVE
(Securities Fraud)

23.   In or about and between January 1996 and December
1997, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant
DOMINICK DIONISIO, together with others, knowingly and willfully
used and employed manipulative and deceptive devices and
contrivances in violation of Rule 10b-5 of the rules and
regulations of the Securities and Exchange Commission (Title 17,
Code of Federal Regulations, Section 240.10b-5), in that the
defendant and others directly and indirectly (a) employed
devices, schemes and artifices to defraud; (b) made untrue
statements of material facts and omitted facts necessary in order
to make the statements made, in light of the circumstances under
which they were made, not misleading; and (c) engaged in acts,
practices, and courses of conduct which would and did operate as
a fraud and deceit upon members of the investing public, in
connection with purchases and sales of securities at Global
Strategies Group, Inc., Amerivet Dymally Securities and First
National Equity Corporation by the use of the instruments of
communication in interstate commerce and the mails, in violation

of Title 15, United States Code, Sections 78j(b), 78t and 78ff.

### RACKETEERING ACT SIX
(Extortion)

24. The defendants named below committed the following acts, either one of which alone constitutes the commission of racketeering act six:

A.    Extortion Conspiracy

25. In or about and between 1995 and January 24, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA and JOHN J. DEROSS, together with others, knowingly and intentionally conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that these defendants and their coconspirators agreed to obtain property, to wit: money, from owners, officers, employees and agents of delicatessen supply businesses located in the New York metropolitan area, with their consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951.

B.    Extortion

26. In or about and between 1995 and January 24, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA and JOHN J. DEROSS, together with others, knowingly

and intentionally obstructed, delayed and affected commerce, and the movements of articles and commodities in commerce, by extortion, in that these defendants obtained property, to wit: money, from owners, officers, employees and agents of the delicatessen supply businesses located in the New York metropolitan area, with their consent, which consent was induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951 and 2.

RACKETEERING ACT SEVEN
(Money Laundering Conspiracy:  Conti-nect/ANET)

27.   In or about and between June 1996 and October 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS and DOMINICK DIONISIO, together with William Cutolo and others, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit: the transfer of United States currency, checks and money orders, which transactions in fact involved the proceeds of specified unlawful activity, to wit: loansharking, gambling, securities fraud, distribution of controlled substances and extortion, knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature,

location, source, ownership and control of such proceeds, in
violation of Title 18, United States Code, Sections
1956(a)(1)(B)(i) and 1956(h).

RACKETEERING ACT EIGHT
(Embezzlement of Employee Benefit Plan)

28.   The defendants named below committed the following
acts, either one of which alone constitutes the commission of
racketeering act eight:

A.   Embezzlement of Employee Benefit Plan

29.   On or about and between January 1, 1998, and April
19, 2001, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants FRANK
CAMPANELLA and ANTHONY SAINATO, together with others, knowingly
and intentionally embezzled, stole, and unlawfully and willfully
converted to their own use and the use of others, moneys and
other assets, to wit:  contractually obligated employee benefit
payments, employee welfare benefits, and employee pension
benefits, of Local 400 Production Workers Union Welfare Fund and
Local 400 Production Workers Union Pension Fund (collectively,
"the Funds"), which were employee benefit plans subject to Title
I of the Employee Retirement Income Security Act of 1974, in
violation of Title 18, United States Code, Sections 664 and 2.

B.   Mail Fraud

30.   On or about and between January 1, 1998, and April
19, 2001, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA and ANTHONY SAINATO, together with others, knowingly and intentionally devised a scheme and artifice to defraud, and to obtain money and property of, the Funds by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Sections 1341 and 2.

31.  It was a part of this scheme and artifice that, between January 1, 1998, and April 19, 2001, both dates being approximate and inclusive, the defendants FRANK CAMPANELLA and ANTHONY SAINATO, acting on behalf of Suffolk Alpa, mailed monthly remittances to the Funds stating that Suffolk Alpa employed three or four workers, when in fact, Suffolk Alpa employed a much larger number of employees.  Based on these remittances, which concealed the true number of employees of Suffolk Alpa, the Funds billed Suffolk Alpa for welfare and pension fund employer contributions which were substantially smaller than the contributions that were in fact owed to the Funds.

32.  It was a further part of this scheme and artifice that the defendant FRANK CAMPANELLA, who served as the Local 400 Production Workers Union shop steward at Suffolk Alpa, concealed and failed to report to Local 400 officials that Suffolk Alpa was submitting remittances which substantially understated the number of persons employed by Suffolk Alpa.

33.  For the purpose of executing this scheme and artifice and attempting to do so, on or about and between January

1, 1998 and April 19, 2001, the defendants FRANK CAMPANELLA and
ANTHONY SAINATO caused mail matter, to wit:  envelopes containing
remittances, to be placed in authorized depositories for mail
matter, to be delivered by the United States Postal Service
according to the directions thereon, to the Funds.

### RACKETEERING ACT NINE
(Extortion Conspiracy:  John Doe #1)

34.  On or about and between November 12, 1999, and
December 1, 1999, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants FRANK CAMPANELLA and ANTHONY SAINATO knowingly and
intentionally conspired to obstruct, delay and affect commerce,
and the movement of articles and commodities in commerce, by
extortion, in that the defendants conspired to obtain property,
to wit:  truck delivery contracts, from John Doe #1, an
individual whose identity is known to the Grand Jury, with John
Doe #1's consent, which consent was to be induced by wrongful use
of actual and threatened force, violence and fear, in violation
of Title 18, United States Code, Section 1951.

### RACKETEERING ACT TEN
(Extortion Conspiracy:  John Doe #2)

35.  In or about May 2000, within the Eastern District
of New York and elsewhere, the defendant JOHN J. DEROSS, together
with Ronald Califano and others, knowingly and intentionally
conspired to commit larceny by extortion, to wit: by instilling
in John Doe #2, an individual whose identity is known to the

Grand Jury, a fear that the defendant and another person would cause physical injury to John Doe #2 in the future, in violation of New York Penal Law Sections 155.40 and 105.10.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

## COUNT TWO
(Racketeering Conspiracy)

36.   The allegations of paragraphs 1 through 14 and 17 through 35 are realleged and incorporated as if fully set forth herein.

37.   In or about and between November 1993 and April 19, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," DOMINICK DIONISIO, also known as "Black Dom," ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid," and ANTHONY SAINATO, together with others, being persons employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, in violation of Title 18, United States Code, Section 1962(c).

38.   The pattern of racketeering activity through which

the above-named defendants agreed to conduct the affairs of the enterprise consisted of the racketeering acts one through ten charged in count one, which are realleged and incorporated as if fully set forth herein, and racketeering act eleven set forth below in paragraph 39.  It was part of the racketeering conspiracy that the defendants agreed that at least two of these eleven acts of racketeering would be committed by one or more coconspirators in the conduct of the affairs of the enterprise.

RACKETEERING ACT ELEVEN
(Illegal Gambling)

39.  In or about and between November 1993 and January 6, 2001, both dates being approximate and inclusive, within the Eastern District of New York, Ronald Califano, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, which business was in violation of the laws of the State of New York, involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business, and remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT THREE
(Racketeering through Collection of Unlawful Debt)

40.  The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

41.  In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," and ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid," together with William Cutolo and others, being persons employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through collection of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), that is, a debt incurred in connection with the business of lending money and a thing of value at a rate usurious under State and Federal law, where the usurious rate is at least twice the enforceable rate.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

COUNT FOUR
(Racketeering through Collection of Unlawful Debt)

42.  The allegations of paragraphs 1 through 14 are reacted and incorporated as if fully set forth herein.

43.  In or about and between April 1998 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, also known as "Black Dom," together with John J. DeRoss, Alphonse T. Persico, William Cutolo and others, being a person employed by and associated with the Colombo family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through collection of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), that is, a debt incurred in connection with the business of lending money and a thing of value at a rate usurious under State and Federal law, where the usurious rate is at least twice the enforceable rate.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

### COUNT FIVE
(Loansharking Conspiracy)

44.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

45.   In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," and ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid," together with William Cutolo and others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit.

(Title 18, United States Code, Sections 894 and 3551 et seq.)

### COUNT SIX
(Loansharking Conspiracy)

46.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

47.   In or about and between April 1998 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, also known as "Black Dom," together with John J. DeRoss, Alphonse T. Persico, William Cutolo and others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect

extensions of credit.

      (Title 18, United States Code, Sections 894 and 3551 <u>et seq</u>.)

COUNT SEVEN
(Money Laundering Conspiracy:  Loansharking)

      48.  The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

      49.  In or about and between November 1993 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," JOHN J. DEROSS, also known as "Jackie," and ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid," together with William Cutolo and others, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit:  the transfer of United States currency, involving property used to conduct and facilitate specified unlawful activity, to wit:  loansharking, with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A).

      (Title 18, United States Code, Sections 1956(h) and 3551 <u>et seq</u>.)

## COUNT EIGHT
(Money Laundering Conspiracy:   Loansharking)

50.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

51.   In or about and between April 1998 and October 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, also known as "Black Dom," together with John J. DeRoss, Alphonse T. Persico, William Cutolo and others, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit:  the transfer of United States currency, involving property used to conduct and facilitate specified unlawful activity, to wit:  loansharking, with the intent to promote the carrying on of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT NINE
(Money Laundering Conspiracy:   Embassy Terrace)

52.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

53.   On or about and between May 26, 1999 and June 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, also known as "Jackie," and ALPHONSE T. PERSICO, also

known as "Allie Boy" and "the Kid," together with others, knowing
that the property involved in financial transactions represented
the proceeds of some form of unlawful activity, knowingly and
intentionally conspired to conduct and attempt to conduct
financial transactions affecting interstate commerce, to wit:
the transfer of United States currency, which transactions in
fact involved the proceeds of specified unlawful activity, to
wit: extortion, knowing that such financial transactions were
designed in whole and in part to conceal and disguise the nature,
location, source, ownership and control of such proceeds, in
violation of Title 18, United States Code, Section
1956(a)(1)(B)(i).

> (Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

## COUNT TEN
### (Conspiracy to Distribute Marijuana)

54.   The allegations of paragraphs 1 through 14 are
realleged and incorporated as if fully set forth herein.

55.   In or about and between January 1999 and May 1999,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant DOMINICK
DIONISIO, also known as "Black Dom," together with Enrico
Monteperto and others, knowingly and intentionally conspired to
distribute one hundred kilograms or more of a substance

containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841.

(Title 21, United States Code, Sections 846 and 841(b)(1)(B)(vii); Title 18, United States Code, Sections 3551 et seq.)

## COUNT ELEVEN
(Extortion)

56. The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

57. In or about and between 1995 and January 24, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," and JOHN J. DEROSS, also known as "Jackie," together with others, knowingly and intentionally obstructed, delayed and affected commerce, and the movement of articles and commodities in commerce, by extortion, in that these defendants and their coconspirators obtained property, to wit:  money, from owners, officers, employees and agents of delicatessen supply businesses located in the New York metropolitan area, with their consent, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951, 2 and 3551 et seq.)

COUNT TWELVE
(Money Laundering Conspiracy:  Conti-nect/ANET)

58.  The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

59.  In or about and between June 1996 and October 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN J. DEROSS, also known as "Jackie," and DOMINICK DIONISIO, also known as "Black Dom," together with William Cutolo and others, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, knowingly and intentionally conspired to conduct and attempt to conduct financial transactions affecting interstate commerce, to wit:  the transfer of United States currency, checks and money orders, which in fact involved the proceeds of specified unlawful activity, to wit:  loansharking, gambling, securities fraud, distribution of controlled substances and extortion, knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of such proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT THIRTEEN
(Embezzlement of Employee Benefit Plan)

60.   The allegations of paragraphs 1 through 14 are reertalleged and incorporated as if fully set forth herein.

61.   On or about and between January 1, 1998, and April 19, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," and ANTHONY SAINATO, together with others, knowingly and intentionally embezzled, stole, and unlawfully and willfully converted to their own use and the use of others, moneys and other assets, to wit: contractually obligated employee benefit payments, employee welfare benefits and employee pension benefits, of the Funds.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

### COUNT FOURTEEN
(Mail Fraud)

62.   The allegations of paragraphs 1 through 14 and 31 through 32 are realleged and incorporated as if fully set forth herein.

63.   On or about and between January 1, 1998, and April 19, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK CAMPANELLA, also known as "Frank Campy," and ANTHONY SAINATO, together with others, knowingly and intentionally devised a scheme and artifice to defraud, and to obtain money and property

of, the Funds, by means of materially false and fraudulent
pretenses, representations and promises.

64.   For the purpose of executing this scheme and
artifice and attempting to do so, on or about and between January
1, 1998 and April 19, 2001, the defendants ANTHONY SAINATO and
FRANK CAMPANELLA caused mail matter, to wit: envelopes
containing remittances, to be placed in authorized depositories
for mail matter, to be delivered by the United States Postal
Service according to the directions thereon, to the Funds.

(Title 18, United States Code, Sections 1341, 2 and
3551 et seq.)

COUNT FIFTEEN
(Extortion Conspiracy:  John Doe #1)

65.   The allegations of paragraphs 1 through 14 are
realleged and incorporated as if fully set forth herein.

66.   On or about and between November 12, 1999, and
December 1, 1999, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendants FRANK CAMPANELLA, also known as "Frank Campy," and
ANTHONY SAINATO, knowingly and intentionally conspired to
obstruct, delay and affect commerce, and the movements of
articles and commodities in commerce, by extortion, in that the
defendants conspired to obtain property, to wit:  truck delivery
contracts, from John Doe #1, an individual whose identity is
known to the Grand Jury, with John Doe #1's consent, which

consent was to be induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951 and 3551 et seq.)

### COUNT SIXTEEN
(Extortion Conspiracy:  John Doe #2)

67.   The allegations of paragraphs 1 through 14 are realleged and incorporated as if fully set forth herein.

68.   In or about May 2000, within the Eastern District of New York and elsewhere, the defendant JOHN J. DEROSS, also known as "Jackie," together with Ronald Califano and others, knowingly and intentionally conspired to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and their coconspirators conspired to obtain property, to wit:  money, from John Doe #2, an individual whose identity is known to the Grand Jury, with John Doe #2's consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
(RICO Forfeiture)

69.   The allegations contained in counts one, two and three of this superseding indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture

pursuant to the provisions of Title 18, United States Code, Section 1963.

70.   As a result of the offenses set forth in counts one, two, and three of this superseding indictment, the defendant ALPHONSE T. PERSICO, also known as "Allie Boy" and "the Kid":

a.   has interests which he acquired or maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   has interests in, security of, claims against, or property or contractual rights affording him a source of influence over, the Colombo family, which the defendant ALPHONSE T. PERSICO has established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(2); and

c.   has property constituting or derived from proceeds which he obtained directly or indirectly from racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(3).

71.   The property subject to forfeiture, upon conviction of the defendant ALPHONSE T. PERSICO of any one or more of counts one, two and three of this superseding indictment,

includes an amount equal to $1,546,855 in United States currency.

72. If, by any act or omission of the defendant ALPHONSE T. PERSICO, any property forfeitable pursuant to Title 18, United States Code, section 1963(a):

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty, then it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant ALPHONSE T. PERSICO up to the value of such forfeitable property described in subparagraphs (a) through (e) above.

73. Such substitute property includes, but is not limited to:

a. all funds or other monetary instruments on deposit in or credited to account number 52524279 in the name of ALPHONSE T. PERSICO, located at Citibank, N.A., New York, New York;

b. all funds or other monetary instruments on

deposit in or credited to account number 50503019 in the name of ALPHONSE T. PERSICO, located at Citibank, N.A., New York, New York;

> c.    all funds or other monetary instruments on deposit in or credited to account number 80892442206 in the name of ALPHONSE T. PERSICO, located at TIB Bank of the Keys, 3618 North Roosevelt Boulevard, Key West, Florida;

> d.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 8420 11th Avenue, Brooklyn, NY  11228, described in the land records of Kings County, New York, as Block 6030, Lot 43;

> e.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 6713-6717 11th Avenue, Brooklyn, New York, described in the land records of Kings County, New York, as Block 5766, Lot 7;

> f.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 6712-6714 11th Avenue, Brooklyn, New York, described in the land records of Kings County, New York, as Block 5765, Lots 44 and 47;

> g.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at

6322 11th Avenue, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 5737, Lot 46;

         h.    all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
255 4th Avenue, Brooklyn, New York, described in the land records
of Kings County, New York, as Block 961, Lot 3;

         i.    all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
713 86th Street, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 6037, Lot 62;

         j.    all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
719-721 86th Street, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 6037, Lot 60;

         k.    all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at 58
Admiralty Loop, Staten Island, New York, described in the land
records of Richmond County, New York, as Block 6728, Lot 43;

         l.    all right, title, and interest in the
proceeds of the sale of that lot or parcel of land, together with

its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 2319 Richmond Terrace, Staten Island, New York, described in the land records of Richmond County, New York, as Block 1105, Lot 5;

m.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 737 Blue Mountain Road (formerly 1294 Blue Mountain Road), Saugerties, New York, described in the land records of Ulster County, New York, as Section 8.3, Block 6, Lot 27;

n.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 773 Blue Mountain Road (formerly known as 1298 Blue Mountain Road), Saugerties, New York, described in the land records of Ulster County, New York, as  Section 8.3, Block 6, Lot 26;

o.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 781 Blue Mountain Road, Saugerties, New York, described in the land records of Ulster County, New York, as Section 8.3, Block 6, Lot 25;

p.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments, and easements, located at
3031 N.E. 48th Street, Lighthouse Point, Florida, described as
Block 1, Lot 8, Coral Key Villas 11th Section, in Plat Book 91,
page 4, of the public land records of Broward County, Florida;

        q.  all right, title, and interest in the assets
of Romantique Limousine, Inc., 6713 11th Avenue, Brooklyn, New
York;

        r.  all right, title, and interest in the assets
of 6713 Corporation, 6713 11th Avenue, Brooklyn, New York;

        s.  all right, title, and interest in the assets
of Desali Realty Co., 6713 11th Avenue, Brooklyn, New York;

        t.  all right, title, and interest in the assets
of D&B Partnership, 6322 11th Avenue, Brooklyn, New York;

        u.  all right, title, and interest in the assets
of Perks Coffee Distributors, Inc., 6717 11th Avenue, Brooklyn,
New York;

        v.  all right, title, and interest in the assets
of LAMBS Persico Partners, 6712 11th Avenue, Brooklyn, New York;

        w.  all right, title, and interest in the assets
of Ground Transportation, Inc., also known as Brownstone Car
Service and as Brownstone Radio Group, 255 4th Avenue, Brooklyn,
New York;

        x.  all right, title, and interest in the assets
of Taylor Made Excursions, Inc., P.O. Box 6556, Key West,

34

Florida; and

y.   all right, title, and interest in that boat
or sea vessel described as a 1997 50-foot Sea Ray, bearing the
name "Looking Good" and hull number SERF0297A797.

(Title 18, United States Code, Sections 1963(a),
1963(b), and 1963(m))

<u>CRIMINAL FORFEITURE ALLEGATION</u>
(Money Laundering Forfeiture)

74.   The allegations contained in counts seven and nine
of this superseding indictment are hereby realleged and
incorporated by reference for the purpose of alleging forfeiture
pursuant to the provisions of Title 18, United States Code,
Section 982.

75.   Upon conviction of the defendant ALPHONSE T.
PERSICO, also known as "Allie Boy" and "the Kid," of either or
both of counts seven and nine of this superseding indictment, the
defendant ALPHONSE T. PERSICO shall forfeit to the United States
any property, real or personal, involved in such offense, and any
property traceable to such property.

76.   The property to be forfeited by the defendant
ALPHONSE T. PERSICO, upon his conviction of either or both of
counts seven and nine of this superseding indictment, includes an
amount equal to $1,546,855 in United States currency.

77.   If, by any act or omission of the defendant

35

ALPHONSE T. PERSICO, any property forfeitable pursuant to Title
18, United States Code, section 982:

        a.   cannot be located upon the exercise of due
diligence;

        b.   has been transferred or sold to, or deposited
with, a third person;

        c.   has been placed beyond the jurisdiction of
the Court;

        d.   has been substantially diminished in value;
or

        e.   has been commingled with other property which
cannot be subdivided without difficulty, then it is the intention
of the United States, pursuant to Title 21, United States Code,
Section 853(p), as incorporated by Title 18, United States Code,
Section 982(b), to seek forfeiture of any other property of the
defendant ALPHONSE T. PERSICO up to the value of such forfeitable
property described in subparagraphs (a) through (e) above.

        78.   Such substitute property includes, but is not
limited to:

        a.   all funds or other monetary instruments on
deposit in or credited to account number 52524279 in the name of
ALPHONSE T. PERSICO, located at Citibank, N.A., New York, New
York;

        b.   all funds or other monetary instruments on

36

deposit in or credited to account number 50503019 in the name of
ALPHONSE T. PERSICO, located at Citibank, N.A., New York, New
York;

c.   all funds or other monetary instruments on
deposit in or credited to account number 80892442206 in the name
of ALPHONSE T. PERSICO, located at TIB Bank of the Keys, 3618
North Roosevelt Boulevard, Key West, Florida;

d.   all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
8420 11th Avenue, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 6030, Lot 43;

e.   all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
6713-6717 11th Avenue, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 5766, Lot 7.

f.   all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,
improvements, fixtures, attachments, and easements, located at
6712-6714 11th Avenue, Brooklyn, New York, described in the land
records of Kings County, New York, as Block 5765, Lots 44 and 47;

g.   all right, title, and interest in the lot or
parcel of land, together with its buildings, appurtenances,

improvements, fixtures, attachments, and easements, located at 6322 11th Avenue, Brooklyn, New York, described in the land records of Kings County, New York, as Block 5737, Lot 46;

h.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 255 4th Avenue, Brooklyn, New York, described in the land records of Kings County, New York, as Block 961, Lot 3;

i.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 713 86th Street, Brooklyn, New York, described in the land records of Kings County, New York, as Block 6037, Lot 62;

j.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 719-721 86th Street, Brooklyn, New York, described in the land records of Kings County, New York, as Block 6037, Lot 60;

k.   all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 58 Admiralty Loop, Staten Island, New York, described in the land records of Richmond County, New York, as Block 6728, Lot 43;

l.   all right, title, and interest in the proceeds of the sale of that lot or parcel of land, together with

its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 2319 Richmond Terrace, Staten Island, New York, described in the land records of Richmond County, New York, as Block 1105, Lot 5;

m.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 737 Blue Mountain Road (formerly 1294 Blue Mountain Road), Saugerties, New York, described in the land records of Ulster County, New York, as Section 8.3, Block 6, Lot 27;

n.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 773 Blue Mountain Road (formerly known as 1298 Blue Mountain Road), Saugerties, New York, described in the land records of Ulster County, New York, as  Section 8.3, Block 6, Lot 26;

o.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at 781 Blue Mountain Road, Saugerties, New York, described in the land records of Ulster County, New York, as Section 8.3, Block 6, Lot 25;

p.    all right, title, and interest in the lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments, and easements, located at

3031 N.E. 48th Street, Lighthouse Point, Florida, described as
Block 1, Lot 8, Coral Key Villas 11th Section, in Plat Book 91,
page 4, of the public land records of Broward County, Florida;

q.   all right, title, and interest in the assets
of Romantique Limousine, Inc., 6713 11th Avenue, Brooklyn, New
York;

r.   all right, title, and interest in the assets
of 6713 Corporation, 6713 11th Avenue, Brooklyn, New York;

s.   all right, title, and interest in the assets
of Desali Realty Co., 6713 11th Avenue, Brooklyn, New York;

t.   all right, title, and interest in the assets
of D&B Partnership, 6322 11th Avenue, Brooklyn, New York;

u.   all right, title, and interest in the assets
of Perks Coffee Distributors, Inc., 6717 11th Avenue, Brooklyn,
New York;

v.   all right, title, and interest in the assets
of LAMBS Persico Partners, 6712 11th Avenue, Brooklyn, New York;

w.   all right, title, and interest in the assets
of Ground Transportation, Inc., previously known as Brownstone
Car Service and as Brownstone Radio Group, 255 4th Avenue,
Brooklyn, New York;

x.   all right, title, and interest in the assets
of Taylor Made Excursions, Inc., P.O. Box 6556, Key West,
Florida; and

y.   all right, title, and interest in that boat

40

or sea vessel described as a 1997 50-foot Sea Ray, bearing the name "Looking Good" and hull number SERF0297A797.

(Title 18, United States Code, Section 982)

A TRUE BILL

_____
FOREPERSON

_____
ALAN VINEGRAD
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 1999R01685

FORM DBD-34

CR. No. 01-0056 (S-4)(S-5)(RR)

# UNITED STATES DISTRICT COURT

### EASTERN District of NEW YORK

#### CRIMINAL  Division

THE UNITED STATES OF AMERICA

*vs.*

FRANK CAMPANELLA, ET AL.,

*Defendants.*

## SUPERSEDING
## INDICTMENT

(T. 18, U.S.C., §§ 664, 894, 982, 1341, 1951, 1955, 1956(h), 1962(c), 1962(d), 1963, 2 and 3551 et seq.; T. 21, U.S.C., §§ 846 and 841(b)(1)(B)(viii)).

A true bill.

_____
                                                    Foreman

Filed in open court this _____ day,

of _____ A.D. 19 _____

_____
                                                    Clerk

Bail, $ _____

AMY WALSH, Assistant U.S. Attorney (718) 254-6134