UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
United States of America,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　-against-　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　:　　04-CR-1068 (DLI)
　　　　　　　　　　　　　　　　　　　　　:
Dominick Dionisio,　　　　　　　　　　　 :
　　also known as "Black Dom,"　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　　　　 :
------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

　　　　Defendant Dominick Dionisio, an associate of the Colombo organized crime family of La Cosa Nostra since around 1990, presently is charged with racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (hereinafter the "2004 indictment"). Defendant moves to dismiss the 2004 indictment on double jeopardy grounds and a breach of plea agreement theory. The court held oral argument on defendant's motion on September 1, 2005 and asked the parties for further briefing on the issues. For the reasons that follow, defendant's motion is denied.

　　　　Defendant's motion to dismiss is based on the disposition of a previous indictment, in 2001, in the Eastern District of New York (01-CR-56) for substantive racketeering and racketeering conspiracy charges covering the time period from 1993 to 2001 and involving the Colombo family (hereinafter the "2001 indictment"). Pursuant to a written plea agreement, defendant pled guilty on January 16, 2002 to one count of substantive racketeering (RICO, 18 U.S.C. § 1962(c)), which included the following as predicate, or "racketeering," acts: loansharking conspiracy, two acts of

1

money laundering conspiracy, conspiracy to distribute marijuana, conspiracy to distribute MDMA, and securities fraud.[1] The racketeering conspiracy count alleged in the 2001 indictment included these same racketeering acts. Other than the substantive racketeering count, all other counts in the 2001 indictment, including the racketeering conspiracy count, were dismissed "with prejudice" (Def.'s Ex. B ¶ 5(b)).

Defendant contends that the 2004 indictment seeks to punish him for the same conduct he was punished for in the 2001 indictment. Specifically, defendant claims the 2004 indictment repeats conduct contained in Racketeering Act Three of the 2001 indictment, "Conspiracy to Distribute Marijuana," which states:

> In or about and between January 1999 and May 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINICK DIONISIO, together with Enrico Monteperto and others, knowingly and intentionally conspired to distribute a substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(Def.'s Ex. A ¶ 21.) The Presentence Investigation Report (PSR) for the 2001 indictment, dated May 3, 2002, described Racketeering Act Three as follows:

> In 1999, [Joseph] Petillo attempted to recruit [Anthony] Molinaro to pick up a 500 pound (227 kilograms) shipment of marijuana in Baltimore, Maryland, for his (Petillo's) friend. When Molinaro declined the offer, Petillo recruited Monteperto instead. On the day of the arranged pick-up, Dionisio and Monteperto robbed the shipment of marijuana from the suppliers in Baltimore and did not deliver it to Petillo's friend. The Government advised that it is unknown whether the defendants were armed during this robbery. Additionally, it is unknown whether Dionisio and Monteperto distributed the approximately 227 kilograms of marijuana which they stole.

(Def.'s Ex. C ¶ 40.) An affidavit supplied at the court's request following oral argument, from Gary

---

[1] Though the indictment included ten racketeering acts, defendant was only named in, and pled guilty to, these six racketeering acts.

J. Pontecorvo, an FBI special agent who was the case agent for the 2001 and 2004 prosecutions of defendant, describes this conduct somewhat differently:

> According to [William] Cutolo, Jr., in the Spring of 1999, Dionisio advised him that he (Dionisio) and "Ricky" (Colombo associate Enrico Monteperto) stole 1,000 pounds of marijuana from the intended recipients by posing as police officers. Dionisio advised that they drove a car for a long period of time on the East Coast and jumped out of the car and shouted to the recipients of the marijuana load to stick them up. This robbery, according to Cutolo, Jr., caused conflict within the crew of Cutolo, Sr. because crew member and Colombo associate Joseph Petillo was associated with individuals who were to receive the marijuana shipment that Dionisio had stolen. Dionisio further advised Cutolo, Jr. that he had sold the load of marijuana.

(Pontecorvo Aff. ¶ 4.)

The plea agreement defendant signed in 2002 contained the following language:

no further criminal charges will be brought against the defendant for the specific crimes charged against the defendant in the above-captioned superseding indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.

(Def.'s Ex. B ¶ 5(a).) The Honorable Reena Raggi, then U.S. District Judge, sentenced defendant on June 4, 2002 to 78 months of imprisonment. This sentence was to run concurrently with a sentence imposed by U.S. District Judge Nina Gershon on September 7, 2000, after defendant pled guilty on April 27, 2000 to another count of substantive racketeering.[2]

The racketeering conspiracy charge in the 2004 indictment, covering November 1991 to May 1999, alleges four racketeering acts: (1) a 1991 double attempted murder, (2) a 1991 robbery of a Yeshiva, (3) a conspiracy to rob marijuana from Hispanic narcotics traffickers in or about and

---

[2] In this case, which covered the period between January 1991 and March 1998, the enterprise was not the Colombo family but a group of individuals involved in securities fraud.

between August 1998 and May 1999, and (4) a conspiracy to rob marijuana "from a white male residing in the vicinity of Battery Park City in Lower Manhattan" in or about and between August 1998 and May 1999. (Def.'s Ex. E ¶¶ 11–19.) The court requested from the government the additional affidavit signed by Special Agent Pontecorvo to obtain more detail regarding Racketeering Acts Three and Four, both labeled "Robbery Conspiracy," in the 2004 indictment. The following additional facts were provided regarding Racketeering Act Three:

> [Paul] Rizzuto [Colombo family associate] advised the CW [cooperating witness; a Colombo associate] that he and others were following some Mexicans and need[ed] to borrow the CW's car. They agreed to meet at a location in Staten Island. Thereafter, the CW met Rizzuto, Monteperto and Dionisio at the Staten Island location. At that time, Rizzuto explained that they were going to steal marijuana from the Mexicans. . . . The CW later learned that Petillo put in a complaint to Cutolo, Sr. regarding the robbery of this marijuana load. The CW has advised that the load was 1100 to 1200 pounds.

(Pontecorvo Aff. ¶ 5.) Racketeering Act Four is further described as follows:

> Prior to the CW's provision, in late 2004, of information regarding this robbery, [Pontecorvo] did not have any knowledge from any other source or evidence that it had occurred. According to the CW, in summer 1998 or Spring 1999, the CW was involved in an illegal sports betting operation with the Colombo family. Through the business, the CW met [a] white male, who was a gambler with the operation. . . . [T]he CW learned that he and the white male both knew an individual known as "Lou T." The white male further advised that he had done marijuana deals with Lou T. The CW later learned from Lou T. that this was true. When the CW told Dionisio about the substance of the conversation with the white male, Dionisio planned a robbery of the white male. Dionisio directed the CW to tell Lou T. to order 200 pounds of marijuana from the white male. The CW has advised that Dionisio wanted to set up the white male by making him believe it was an ordinary marijuana transaction. On the day the marijuana was to be picked up, Dionisio, Rizzuto and the CW traveled in the CW's car from Staten Island to the white male's apartment building in Lower Manhattan, near the Battery Tunnel exit. When the white male was spotted with two duffel bags, Dionisio and Rizzuto approached the white male and took the bags. The bags, which contained marijuana, were placed in the trunk of the CW's car and the white male was forced into the back seat of the CW's car as Rizzuto held him at gunpoint. The CW later held the gun and kept the white male in the CW's car while Dionisio and Rizzuto went into the white male's building. All

4

four men thereafter drove to Staten Island where they were met by Monteperto. The CW took the bags of marijuana to an apartment in Staten Island. Dionisio, Rizzuto, Monteperto and the white male departed the meeting location in Monteperto's truck.

(Pontecorvo Aff. ¶ 6.)

**Double Jeopardy**

The Double Jeopardy Clause, providing that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. CONST. amend V, prohibits "successive punishments and . . . prosecutions for the same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). In determining whether the Double Jeopardy Clause prohibits a particular prosecution, it is useful for the court to "to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass v. United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975).

> In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge."

*Id*. (internal citations omitted) (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971)). "Without risk of a determination of guilt, jeopardy does not attach . . . ." *Serfass*, 420 U.S. at 391–92.

The Second Circuit has held that substantive racketeering (18 U.S.C. § 1962(c)) and racketeering conspiracy (18 U.S.C. §1962(d)) are not the same criminal offense for double jeopardy purposes. *United States v. Sessa*, 125 F.3d 68 (2d Cir. 1997). Therefore, the defendant only challenges the repetition of racketeering conspiracy charges in the 2001 and 2004 indictments.

While the government argues that jeopardy never attached to the racketeering conspiracy charge because defendant has never been tried or convicted of racketeering conspiracy, the defendant insists that jeopardy attached when the racketeering conspiracy charge was dismissed "with prejudice" pursuant to his plea agreement. With regard to the threshold question of whether jeopardy attached to the racketeering conspiracy charge, there appears to be no Second Circuit or Supreme Court authority directly addressing whether jeopardy attaches when a charge is dismissed with prejudice pursuant to a plea agreement.

Defendant urges the court to follow *United States v. Mintz*, 16 F.3d 1101 (10th Cir. 1994). In *Mintz*, the defendant pled guilty, in the U.S. District Court for the Southern District of Florida, to conspiracy to import marijuana. Other charges, including conspiracy to possess marijuana with intent to distribute, pursuant to 21 U.S.C. § 846 ("§ 846 conspiracy"), were dismissed with prejudice. Shortly thereafter, defendant was indicted in the U.S. District Court for the District of Kansas for § 846 conspiracy. The Tenth Circuit found the Florida conspiracy charge and the Kansas conspiracy charge to be "one conspiracy," i.e., the "same criminal offense." In reaching this conclusion, the Tenth Circuit impliedly decided, as a threshold matter, that jeopardy attached when the conspiracy charge in the Florida district court was dismissed with prejudice. *See id*. at 1106.

The government argues that *Mintz* was incorrectly decided. The government notes that, instead of discussing *Serfass*, the *Mintz* court relied exclusively on *United States v. Holland*, 956 F.2d 990 (10th Cir. 1992). *Mintz*, 16 F.3d at 1103. The only reference to attachment of jeopardy in *Mintz* is a parenthetical citation to *Holland*, stating, "Jeopardy attached to conspiracy count which had been dismissed with prejudice." *Id*. In holding that jeopardy attached to the dismissal with prejudice of one of the counts in the indictment, *Holland*, in turn, relied exclusively on *United States*

6

*v. Derr*, 726 F.2d 617 (10th Cir. 1984), which the government argues is the root of the problem in *Mintz*. The government is correct that this citation chain is faulty, because the decision in *Derr* was not based on double jeopardy principles. In *Derr*, the district court granted the government's motion to dismiss an initial indictment under Fed. R. Crim. P. 48(a) to "best meet the ends of justice." 726 F.2d at 618. Without inquiring further into the government's reasons, the district court granted the government's motion to dismiss without prejudice. Nearly two years later, in a separate prosecution, the government indicted the defendant for the same conduct. The defendant moved to dismiss this second, subsequent indictment, not on double jeopardy grounds but "because the government did not submit any reasons for dismissal" of the first indictment. *Id*. The Tenth Circuit, without any mention of double jeopardy, held that the district court had abused its discretion when it granted the government's Rule 48(a) motion to dismiss without prejudice because "it did not require that the government state reasons for its desire to dismiss the original indictment." *Id*. at 619.

The government additionally submits that *Mintz* appears to be in conflict with other Tenth Circuit authority. The government argues that the *Mintz* court ignored prior precedent established in *United States v. King*, 581 F.2d 800 (10th Cir. 1978), where the Tenth Circuit, citing *Serfass*, held that jeopardy did not attach to the pretrial dismissal of a prosecutor's information. The government further points out that Tenth Circuit decisions have not followed *Mintz*. For example, in *United States v. Marchese*, 46 F.3d 1020 (10th Cir. 1995), the district court dismissed a thirty-four count indictment upon a pretrial motion made by the defendant. When the government appealed, the defendant argued that the appeal, seeking retrial, was improper because jeopardy had attached when the district judge considered evidence outside of the indictment. Quoting *Serfass*, the Tenth Circuit noted that the defendant had not faced "risk of a determination of guilt." *Id*. at 1022. The Tenth

7

Circuit held that jeopardy had not attached, stating that arguments on the motion "did not constitute the presentation of evidence for the purpose of determining guilt or innocence, which is 'the essence of the attachment of jeopardy.'" *Id*. at 1023 (quoting *United States v. Olson*, 751 F.2d 1126, 1128 (9th Cir. 1985)). In another case, *United States v. La Cock*, 366 F.3d 883 (10th Cir. 2004), the Tenth Circuit addressed whether jeopardy had attached when the district court dismissed the indictment following a motion to dismiss by the defendant. *La Cock* also cited *Serfass*, finding that, since the defendant had "not yet waived his right to a jury trial" and "the district court could not have decided Defendant's innocence or guilt, . . . jeopardy had not yet attached." *Id*. at 887 n.8. Although *King*, *Marchese*, and *La Cock* did not involve dismissals pursuant to plea agreements, these cases, all of which cite *Serfass*, paint *Mintz* as an aberrance in Tenth Circuit law. The court thus declines to rely on *Mintz*.

Defendant argues that *Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987), enounces different double jeopardy standards specific to the plea bargaining context. However, *Ricketts* is not inconsistent with the principles of *Serfass*. In *Ricketts*, the defendant was charged with first degree murder but pled guilty to the lesser included offense of second degree murder pursuant to a plea agreement that required him to testify against two other individuals who were involved in the same murder. The defendant originally testified as required under the agreement, but when the convictions of the two individuals were overturned and the government pursued retrial, the defendant refused to testify, believing that he was not required to do so after his sentencing. The government filed a new information charging the defendant with first degree murder, and the defendant was convicted and sentenced to death. The plea agreement the defendant had signed provided that, if the defendant refused to testify, the "entire agreement [would be] null

8

and void and the original charge w[ould] be *automatically* reinstated," and the parties would be "returned to the positions they were in before this agreement." *Ricketts*, 483 U.S. at 9. Finding that the defendant's petition for a writ of habeas corpus should have been denied, the Court held that, under the terms of the plea agreement, defendant had waived the double jeopardy defense, and defendant's breach of the plea agreement simply returned both parties to the status quo before any plea agreement had been signed. The Court explained that "the Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." *Id*. at 11 (citing *United States v. Scott*, 437 U.S. 82, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978)). The focus of *Ricketts* was thus not on the attachment of jeopardy but on a breach of plea agreement theory.

The most instructive case in the Second Circuit on the issue of whether jeopardy has attached in the instant case is *United States v. Fontanez*, 869 F.2d 180 (2d Cir. 1989). In *Fontanez*, the defendant, who was charged with three violations of Canadian law, pled guilty to cocaine possession. The other two counts against him, possession of hashish and a conspiracy count, were withdrawn. Fontanez was later indicted in the U.S. District Court for the Northern District of New York ("NDNY") for conspiracy among other crimes. Upon Fontanez's motion to dismiss the indictment, the government agreed to dismiss the conspiracy charge, and the defendant later pled guilty to a single Travel Act count. The Second Circuit denied the defendant's appeal of his conviction on double jeopardy grounds because "the only counts on which Fontanez was put in jeopardy"—the cocaine possession and Travel Act counts in the Canada and NDNY indictments, respectively—were "separate offenses" under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The court specifically addressed attachment of jeopardy regarding the conspiracy counts, because Fontanez had argued that the conspiracy counts in the Canadian and NDNY indictments,

9

both of which were dismissed when the defendant pled guilty to other counts, were "virtually identical": "Though the two conspiracy charges were indeed similar, this argument is unavailing, for when a count has been dismissed, jeopardy has not attached unless the defendant was first 'put to trial.'" *Fontanez*, 869 F.2d at 183 (quoting *Serfass*, 420 U.S. at 388 (quoting *Jorn*, 400 U.S. at 479)).

Also instructive is *Lockett v. Montemango*, 784 F.2d 78 (2d Cir. 1986). In *Lockett*, the Second Circuit reversed the district court's granting of Lockett's petition for a writ of habeas corpus, wherein Lockett had challenged, on double jeopardy grounds, New York State's right to prosecute him for armed robbery. After being found not fit to stand trial based on a diagnosis of post-traumatic stress disorder brought on by "Vietnam War syndrome," Lockett entered a plea of not responsible by reason of mental disease or defect pursuant to N.Y. Crim. Proc. Law § 220.15.[3] *Lockett*, 784 F.2d at 79. Upon Lockett's guilty plea, which the court accepted after holding a hearing, all criminal proceedings against Lockett were terminated, and he was remanded for possible civil commitment. *See id*. at 79–80. The State later learned that Lockett had never served in the Vietnam War, and the Supreme Court, Kings County, granted the State's motion to vacate Lockett's plea, holding that double jeopardy had not attached. On appeal, the Appellate Division held that the Supreme Court had no authority to vacate the plea but did not reach the double jeopardy issue. The New York Court of the Appeals reversed the Appellate Division and held that vacating Lockett's plea and prosecuting him did not present double jeopardy problems, since jeopardy had not attached.

The Second Circuit, in noting the Supreme Court's caution "against the use of mechanical rules in double jeopardy analysis, at least in unusual procedural settings," *Lockett*, 784 F.2d at 82

---

[3] This section allows a defendant to raise an insanity defense before trial in the form of a plea, which the state must consent to and the court must accept.

10

(citing *Illinois v. Somerville*, 410 U.S. 458, 467 (1973)), also explained:

> While it is evident that a trial on the merits will cause jeopardy to attach once the jury has been empanelled or the first witness has been called at a bench trial, it is less clear as to what *pretrial* proceedings are such as to place a defendant in jeopardy.

*Id*. In finding that jeopardy did not attach when Lockett entered his plea, the Second Circuit focused on the language in *Serfass* that, "[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *See id.* at 83–84. The court further reasoned: "Since jeopardy can attach only at a proceeding where the defendant risks conviction, *Serfass, supra,* no jeopardy attached at appellee's plea proceeding." *Id*. at 84.

The Second Circuit decisions in *Fontanez* and *Lockett* [4] are consistent with decisions in other circuits holding that jeopardy does not attach when a charge is dismissed pursuant to a plea agreement. In some of the cases, it is clear that the charges were dismissed with prejudice. *See, e.g.*, *United States v. Garner*, 32 F.3d 1305, 1311 (8th Cir. 1994) ("[J]eopardy never attached to the

---

[4] Following oral argument, the court gave the parties an opportunity to identify other relevant Second Circuit authority on whether jeopardy attaches to a dismissal with prejudice, pursuant to a plea agreement. No other applicable cases were presented to the court. As the government notes in its second supplemental brief, the defendant's citation of *United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979), does not undermine *Fontanez* and *Lockett*.

In *Cambindo Valencia*, defendants Jesus and Rosalinda Losada challenged, on double jeopardy grounds, their convictions for a conspiracy count involving cocaine. Jesus and Rosalinda had been prosecuted previously for conspiracy to distribute cocaine; Jesus had pled guilty and, as part of his plea agreement, the conspiracy charges against Rosalinda were dismissed. The Second Circuit in *Cambindo Valencia* recognized that jeopardy had attached to Jesus because he pled guilty to the conspiracy charges but remanded the case to the district court to reapply the "same offense" test. 609 F.2d at 637–38. The Second Circuit noted that, if after further analysis, the district court were to find Jesus's conspiracy conviction barred by double jeopardy, Rosalinda's conviction also would be barred pursuant to the plea agreement signed by Jesus. *Id*. at 638. Indeed, when the district court, on remand, granted Jesus's motion to dismiss on double jeopardy grounds, the court dismissed the conspiracy count against Rosalinda "because of the government's failure to honor a plea agreement." *United States v. Losada*, 674 F.2d 167, 169 (2d Cir. 1982) (reporting district court outcome on remand).

charges dismissed [with prejudice] as part of [the] plea agreement."). In other cases, courts have held that jeopardy has not attached, but it is unclear whether the plea agreements stated that charges were dismissed "with prejudice." *See, e.g.*, *United States v. Nyhuis*, 8 F.3d 731, 735 n.2 (11th Cir. 1993) ("We may disregard the § 846 conspiracy charge in the Michigan indictment which was dismissed pursuant to Nyhuis's plea agreement because jeopardy did not attach to that dismissed charge."); *United States v. Soto-Alvarez*, 958 F.2d 473, 482 (1st Cir. 1992) ("The 1985 indictment charged the defendant with seven separate offenses, however we only concern ourselves with the two charges to which the defendant pled guilty since jeopardy ordinarily does not attach to counts which are dismissed and on which no finding of guilty is made."); *United States v. Vaughan*, 715 F.2d 1373, 1376–77 (9th Cir. 1983) (jeopardy did not attach to charges dismissed pursuant to plea agreement). The court in *Vaughan* cited *United States v. Dahlstrum*, 655 F.2d 971, 974 (9th Cir. 1981), *cert. denied*, 455 U.S. 928, 102 S. Ct. 1293, 71 L. Ed. 2d 472 (1982), for the proposition that "dismissal is not equivalent to acquittal even if dismissal is 'with prejudice.'" 715 F.2d at 1376.

Under the facts of the instant case, defendant was never "put to trial before the trier of facts," and there was no "risk of a determination of guilt." *See Serfass*, 420 U.S. at 391–92. In considering the Second Circuit's reasoning in *Fontanez* and *Lockett*, as well as relevant cases from other circuits, the court finds that jeopardy did not attach when the racketeering conspiracy charge was dismissed with prejudice from the 2001 indictment pursuant to defendant's plea agreement.

Because the court finds that jeopardy did not attach, it is unnecessary to address defendant's arguments in citing *United States v. DeCologero*, 364 F.3d 12 (1st Cir. 2004), for the proposition that "the double jeopardy clause prohibits the government from fragmenting the same criminal conduct into different crimes (racketeering acts) in successive RICO conspiracy prosecutions where

12

. . . there is an identity of enterprises" (Def.'s Mem. at 7). The defendant in *DeCologero* was acquitted following a jury trial and jeopardy certainly attached. *See id*. at 17; *see also United States v. Carrozza*, 55 F. Supp. 2d 84, 88 (D. Mass. 1999) (reporting DeCologero's acquittal). Therefore, the court in *DeCologero* reached the question of whether the RICO conspiracies charged in the two indictments were "the same" for double jeopardy purposes.[5]

Based on the court's finding that jeopardy never attached, defendant's motion to dismiss the 2004 indictment on double jeopardy grounds is denied.

**Breach of Plea Agreement**

The court also considers whether, by filing the present 2004 indictment, the government has breached the plea agreement the defendant signed in January 2002, disposing of the 2001 indictment.[6] As the Court explained in *Santobello v. New York*, when a defendant accepts a guilty

---

[5] The First Circuit separately addressed the district court's decision to divide the case into two separate trials and "postpone" three of the substantive counts and four of the predicate acts. The government cross-appealed this decision, arguing that the postponement would preclude the government from bringing RICO charges in a later trial because of the Double Jeopardy Clause. *DeCologero*, 364 F.3d at 17. The First Circuit ultimately vacated the district court's case management order because "the district judge did not make findings, or negate alternatives, that would justify the extreme remedy of excluding otherwise properly charged RAs [predicate acts] from the initial trial." *Id*. at 25. However, the First Circuit commented that, based upon "the government's premise that all of the predicate acts charged comprised the same pattern, a second RICO prosecution based on the postponed acts would arguably itself be barred by double jeopardy principles, the 'acts' being different but the 'pattern' being the same." *Id*. at 21. Given that the First Circuit was analyzing the district court's plan to have two separate trials, this comment assumes that jeopardy would have attached after a first trial. In the instant case, the court concludes that jeopardy never attached. Thus, again, for double jeopardy purposes, the court need not compare the two conspiracies alleged in the 2001 and 2004 indictments.

[6] Though defendant did not initially present this argument in his motion to dismiss, both the government and defendant addressed it in subsequent papers and at oral argument.

plea, there must be "safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). Plea agreements are to be interpreted using principles of contract law. *See, e.g.*, *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999); *United States v. Pollack*, 91 F.3d 331, 334 (2d Cir. 1996). "In deciding whether a plea agreement has been breached, a court must look to what the parties to the plea agreement reasonably understood to be its terms." *United States v. Lovaglia*, 954 F.2d 811, 817 (2d Cir. 1992). The terms of the agreement must be construed strictly. *Pollack,* 91 F.3d at 335. In addition, any ambiguities must be resolved against the government, in recognition of the government's bargaining advantage. *In re Altro*, 180 F.3d at 375.

Pursuant to the plea agreement defendant signed in 2002, defendant shall not face further charges for the "specific crimes" charged in the 2001 indictment. However, the plea agreement "does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including . . . 18 U.S.C. §§ 1961 et seq." The plain meaning of these provisions, read together, is that the plea agreement only bars a subsequent racketeering conspiracy charge composed of exactly the same predicate acts. The agreement specifically allows conduct alleged in the 2004 indictment to be used as a predicate act, as long as the "specific crime" is not re-alleged. The agreement does not bar, as defendant argues, all further racketeering conspiracy charges, because further racketeering prosecution is explicitly permitted under the agreement. Ignoring the "subsequent prosecution" language would go against the principle that a contract interpretation that "gives a reasonable, lawful, and effective meaning to all the terms is preferred to

14

an interpretation [that] leaves a part unreasonable, unlawful, or of no effect." RESTATEMENT (SECOND) OF CONTRACTS § 203 (1981); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) ("words and phrases should be given their plain meaning and the contract should be construed so as to give full meaning and effect to all of its provisions" (internal quotation marks and alterations omitted)).

Defendant has only argued that Racketeering Acts Three and Four in the 2004 indictment overlap with the 2001 indictment (specifically, Racketeering Act Three). The government maintains that none of the predicate acts charged in the 2001 indictment is re-alleged in the present indictment but "does not dispute that the factual circumstances from which the charge in Racketeering Act 3 arose are the same circumstances giving rise to the marijuana distribution predicate act in the prior indictment."[7] (Gov't Supplemental Mem. at 15 n.6.) In comparing the descriptions of Racketeering Acts Three in both the 2001 and 2004 indictments—as well as the PSR and Special Agent Pontecorvo's supplemental affidavit—the government's position that the conduct described relates to the "two distinct crimes" of conspiracy to distribute marijuana and robbery is at least somewhat suspect. Indeed, though the 2001 indictment alleges conspiracy to distribute marijuana, the PSR states that "it is unknown whether Dionisio and Monteperto distributed" the marijuana, (Def.'s Ex. A ¶ 21). The government's recently submitted supplemental affidavit, however, states that "Dionisio

---

[7] In its initial memorandum in opposition to defendant's motion to dismiss, the government stated that the armed robbery of marijuana as alleged in Racketeering Act Four "was not even known to the government until 2004," (Gov't Mem. at 10), and that "[t]he present prosecution was made possible, in large part, because of the recent cooperation of a Colombo family soldier in 2003 and a Colombo family associate in 2004, both of whom were co-conspirators of Dionisio in the four predicate acts (two each)," (*Id*. at 5). However, the government also did "not dispute that the marijuana trafficking charged in the 2001 indictment came about because of the armed robbery charged in the present indictment as Racketeering Act Three." (*Id*. at 10–11.)

further advised Cutolo, Jr. that he had sold the load of marijuana." (Pontecorvo Aff. ¶ 4.) Without the supplemental affidavit, Racketeering Acts Three in the 2001 and 2004 indictments arguably both involved marijuana robbery, despite the "Conspiracy to Distribute Marijuana" label in the 2001 indictment.

The defendant attacks Racketeering Act Four in the 2004 indictment because it also involves marijuana robbery; however, this marijuana robbery allegedly took place in lower Manhattan, whereas the robbery alleged in Racketeering Act Three in the 2001 indictment allegedly took place in Baltimore, as indicated in the PSR and admitted by defendant. (Def.'s Mem. at 10; Def.'s Ex. C ¶ 40.)

Therefore, at most, only one predicate act in the 2004 indictment overlaps with the 2001 indictment. Even assuming Racketeering Acts Three in both indictments to be the same or similar conduct, the 2004 indictment is not barred. The plea agreement defendant signed in 2002 allows subsequent racketeering conspiracy charges using at least some of the same conduct alleged in the 2001 indictment as predicate acts.

Defendant urges the court to interpret the phrase "specific crimes" more broadly and suggests that the court use the five factor test adopted by the Second Circuit in *Russotti v. United States*, 717 F.2d 27 (2d Cir. 1983), to decide whether the racketeering conspiracies alleged in the 2001 and 2004 indictments are the same "specific crimes," as prohibited in the plea agreement. In *Russotti*, the Second Circuit held that, in analyzing whether two racketeering conspiracy charges are the "same offense" for double jeopardy purposes,[8] "*both* the enterprise and the pattern of activity alleged . . .

---

[8] The court in *Russotti* also explained the inquiry as establishing the "allowable unit of prosecution" in light of a prior conviction or acquittal. 717 F.2d at 32 (quoting *Sanabria v. United States*, 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978)).

must be the same . . . . If either is different, there is no infirmity under the double jeopardy clause." 717 F.2d at 33. *Russotti* imported a test used by the Eighth Circuit in *United States v. Dean*, 647 F.2d 779 (8th Cir. 1981), to determine whether two racketeering conspiracy charges allege distinct patterns of racketeering activity.[9] 717 F.2d at 32.

If the plea agreement defendant signed had mirrored language from the Double Jeopardy Clause, for example, by prohibiting "prosecutions for the same criminal offense," the import of the *Russotti/Dean* test might be appropriate. However, the plea agreement uses the phrase "specific crimes" and explicitly allows subsequent racketeering prosecutions using the "conduct [alleged in the 2001 indictment] as a predicate act." These were the contractual terms negotiated between the defendant and the government, and they should not be disturbed. Breach of plea agreement and double jeopardy defenses are separate, and, in particular where jeopardy has not attached, the former may prove more successful. *See, e.g.*, *Vaughan*, 715 F.2d at 1377 n.1. The breach of plea agreement defense depends not on double jeopardy standards but on the language used in the plea agreement, subject to strict contract interpretation. In the present case, by the terms of the plea agreement, the court finds the 2004 indictment permissible.

---

[9] As listed in *Dean*, the five factors are:

(1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

647 F.2d at 788.

**Conclusion**

For the reasons stated above, defendant's motion to dismiss the 2004 indictment is denied.

SO ORDERED.

DATED:   Brooklyn, New York
         February 15, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge