

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JDB:NMA/JDG
F.#2004R02605

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 29, 2009

<u>By Hand Delivery & ECF</u>

The Honorable Dora L. Irizarry
United States District Judge
United States District Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

            Re:  United States v. Dominick Dionisio
                 <u>Criminal Docket No. 04-1068 (DLI)</u>

Dear Judge Irizarry:

        The government writes respectfully in response to the
defendant's application to modify the conditions of his pretrial
release by eliminating the home confinement and electronic
monitoring provisions of his bond, which was filed by letter
dated June 10, 2009.  (<u>See</u> Docket No. 61 ("Def.'s Ltr.")).  For
the reasons that follow, the government respectfully submits that
the defendant's application should be denied and that his
pretrial supervision should continue to include both home
confinement and electronic monitoring, and should be further
modified to provide for a full and immediate financial disclosure
by the defendant.

I.   <u>Background</u>

        The indictment in this case was filed on December 8,
2004 while the defendant, an associate of the Colombo organized
crime family of La Cosa Nostra ("Colombo family"), was serving
concurrent terms of imprisonment for his racketeering convictions
in <u>United States v. Dionisio, et al.</u>, 99 Cr. 589 (NG) and <u>United
States v. Califano, et al.</u>, 01 Cr. 56 (RR).[1]  Following the

_____

        [1]    Accordingly, the defendant is not only subject to
pretrial supervision with respect to this case, but also post-
confinement supervised release as a result of his prior

Hon. Dora L. Irizarry
June 29, 2009
Page 2

defendant's release from prison after his completion of these
sentences, the government requested that the defendant be
detained prior to trial in this case, based on the defendant's
danger to the community.[2]  On January 3, 2008, the Hon. Steven M.
Gold, United States Magistrate Judge, ordered that the defendant
be released on a two million dollar bond, and that he be subject
to home confinement and electronic monitoring.  Over the last
year the defendant's pretrial release conditions have been
modified by the Court to allow him, with the advance approval of
Pretrial Services, to leave his residence on occasion to attend
to certain family and personal responsibilities.  Significantly,
the defendant's release conditions have also been modified to
allow the defendant to leave his residence to work daily at a
Brooklyn restaurant.  The defendant has remained on electronic
monitoring since his release in January 2008.

II.  Argument

        The defendant has been charged with serious crimes of
violence, including an attempted double murder as well as violent
robberies.  The government will prove these charges at trial
through the testimony of the defendant's criminal accomplices, as
well as other evidence.  In light of the nature of the charges,
and the defendant's long-time association with the Colombo
family, a violent criminal organization, the government
respectfully submits that he is a danger to the community.
Accordingly, the government respectfully submits that the
defendant's application to remove the home confinement and
electronic monitoring conditions of his pretrial release be
denied.

        A.  Legal Standard

        Under the Bail Reform Act, Title 18, United States
Code, Section 3141, et seq., the factors to be considered in
determining whether there are conditions that will reasonably
assure the appearance of the person as required and the safety of
any other person and the community, include (1) the nature and

_____

convictions.

        [2]     The government requested a permanent order of detention
by letter dated December 31, 2007.  (See Docket No. 25).  The
government respectfully incorporates that letter, which is
attached, by reference.

Hon. Dora L. Irizzary
June 29, 2009
Page 3

circumstances of the crimes charged; (2) the history and
characteristics of the defendant; (3) the seriousness of the
danger posed by the defendant's release; and (4) the evidence of
the defendant's guilt.  See 18 U.S.C. § 3142(g).  Each of these
factors favor - at a minimum - continuing the defendant's current
bond conditions requiring home confinement and electronic
monitoring with strict pretrial supervision.  The government
respectfully submits that there are no other conditions of
release short of pretrial detention sufficient to ensure the
safety of the community.

    B.   Organized Crime Defendants

      Courts in the Second Circuit have repeatedly considered
the issue of pretrial detention of organized crime defendants.
See, e.g., United States v. Cirillo, Cr. No. 05-212 (SLT), slip
op. (E.D.N.Y. 2005) (Genovese family acting bosses Dominick
Cirillo and Lawrence Dentico, as well as defendant Anthony
Antico, detained as dangers to the community), aff'd, 149 Fed.
Appx. 40 (2d Cir. 2005); United States v. Gotti, 219 F. Supp. 2d
296, 299-300 (E.D.N.Y. 2002) (Gambino family acting boss Peter
Gotti detained as danger to the community), aff'd, United States
v. Ciccone, 312 F.3d 535, 543 (2d Cir. 2002); United States v.
Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gambino family
captain Carmine Agnello detained as danger to the community);
United States v. Defede, 7 F. Supp. 2d 390, 395-96 (S.D.N.Y.
1998) (Luchese family acting boss Joseph Defede detained as
danger to the community); United States v. Salerno, 631 F. Supp.
1364, 1375 (S.D.N.Y. 1986) (Genovese acting boss and captain
detained as danger to the community), order vacated, 794 F.2d 64
(2d Cir.), order reinstated, 829 F.2d 345 (2d Cir. 1987).

      Together, these cases stand for the following
propositions: (1) leaders of and participants in a violent
organized criminal enterprise are dangerous due to the nature of
their relationship with the enterprise; (2) organized crime
defendants also often constitute a danger to the community due to
the high likelihood that they will continue to commit crimes if
released on bail; and (3) elaborate bail packages involving home
detention and electronic monitoring are often insufficient
safeguards to protect the community against dangerous defendants,
including organized crime defendants.  Given this precedential
landscape, as well as the nature and circumstances of the offense
charged and the defendant's demonstrated willingness to commit
violent crimes on behalf of the Colombo family, the government
submits that removing the defendant's home confinement and

Hon. Dora L. Irizzary
June 29, 2009
Page 4

electronic monitoring conditions would be inappropriate in light
of the factors set forth in Section 3142.

     C.    Home Confinement and Electronic Monitoring
          of the Defendant Should Continue

        The nature, circumstances and strength of the charges
at issue, as well as the history and characteristics of the
defendant, all favor continuation of the defendant's current
restrictive release conditions.

     1.    Nature and Circumstances of the Offense Charged

        First, the charges favor continuing the current
conditions of the bond or as an alternative, pretrial detention.
The defendant is charged with crimes of violence under the
relevant provisions of the Bail Reform Act.  See Ciccone, 312
F.3d at 542 (citing 18 U.S.C. §§ 3156(a)(4)(A), (B)) (Bail Reform
Act defines a "crime of violence" as an offense that has as one
of its elements the "attempted use, or threatened use of physical
force against the person or property of another," or "any other
offense that is a felony and that, by its nature, involves a
substantial risk that physical force against the person or
property of another may be used in the course of committing the
offense"); United States v. Chimurenga, 760 F.2d 400, 404 (2d
Cir. 1985) (conspiracy to commit a crime of violence is a crime
of violence for purposes of the Bail Reform Act).  Specifically,
the defendant is charged with racketeering conspiracy, which
includes predicate acts of attempted murder and multiple robbery
conspiracies.

        Although the defendant derides the charges against him
as the allegations of one or two cooperating witnesses, these
serious charges are supported by not just the testimony of
cooperating witnesses, but also the testimony of credible
eyewitnesses, consensual recordings, and other evidence.
Evidence at trial will show that the defendant was a loyal
associate of the powerful Colombo family captain (and later
underboss) William "Wild Bill" Cutolo during the internecine
struggle known as the "Colombo War," which was waged by two rival

Hon. Dora L. Irizzary
June 29, 2009
Page 5

factions of the Colombo family during the early-to-mid 1990s.[3]
Evidence will further show that, in November 1991, in broad
daylight on a busy street, the defendant and another criminal
associate shot at two individuals associated with a rival Colombo
faction.  Not only was one of those individuals wounded, but
other innocent passers-by on the street were also injured.

        The defendant is also charged with other serious acts
of violence.  The government will prove that the defendant robbed
a Brooklyn yeshiva worker in May 1991 by hitting him from behind
and forcibly taking a bag from his person containing the
yeshiva's deposits for the day.  In another charged incident
between August 1998 and May 1999, the defendant, armed with
loaded automatic firearms and wearing a bullet proof vest, robbed
marijuana dealers, so that he and other Colombo members and
associates could profit from the illegal drug dealing.  The
defendant was later captured on a consensual recording discussing
the robbery.

        2.   History and Characteristics of the Defendant

        The defendant is a longstanding Colombo family
associate, whose crimes on behalf of the Colombo family span at
least a decade.  The defendant has sustained two prior
racketeering convictions, which included predicate acts of
loansharking, securities fraud, money-laundering and drug
trafficking.  These convictions resulted in lengthy prison
sentences.

        Since his release on supervision, the defendant asserts
that he has complied with his release conditions, which have
permitted him to leave his home for work, to run personal
errands, to attend church and to visit with family on certain
approved occasions.  However, recent surveillance and source
information indicates that the defendant is abusing the terms of
his release and that, in his purported employment, the defendant
does not actually work, but uses the job as a pretext to thwart
his stringent release conditions.  For example, law enforcement
surveillance has found the defendant either at his place of
employment, a Brooklyn restaurant, but not working, or leaving

-----

        [3]     The proffer of facts set forth herein does not purport
to provide a complete statement of the facts and evidence of
which the government is aware or that the government will seek to
introduce at trial.

Hon. Dora L. Irizzary
June 29, 2009
Page 6

his place of employment in vehicles with different individuals.
Additionally, Pretrial Services has indicated that other than
letters from the restaurant's owner, it has received no
information to corroborate that the defendant is actually
employed, including pay checks, paycheck stubs or tax forms for
the defendant.

### 3.   Evidence of the Defendant's Guilt

At trial, the government will prove the charges in the
indictment through, among other evidence, the testimony of
cooperating witnesses, eyewitnesses, consensual recordings, and
documentary evidence, including medical records.  The defendant's
allegation that the government's case relies solely on the
testimony of cooperating witnesses who are "less than stellar,"
(Def.'s Ltr. at 2), is belied by the fact that juries sitting in
Eastern District of New York have convicted other Colombo family
members and associates based upon the testimony of these
witnesses.  In United States v. DeMartino, et al., 03 Cr. 285
(RJD), both Vincent DeMartino and Giovanni Floridia were
convicted of conspiracy to commit murder in-aid-of racketeering,
among other charges, based upon the testimony of one cooperating
witness -- Joseph Campanella.  In United States v. Persico, et
al., 04 Cr. 911 (SJ), Giovanni Floridia was the sole cooperating
witness who implicated trial defendant Michael Spataro in the
conspiracy to murder Joseph Campanella; a jury convicted Spataro
of conspiracy to commit murder in-aid-of racketeering.

Moreover, the defendant's specific efforts to impugn
the credibility of government witnesses is unavailing.  The
defendant misleadingly asserts that Joseph Campanella "continued
to commit crimes for the Colombo family . . . by threatening a
witness" when he "was supposed to be truthfully 'proffering' to
the government."  (Def.'s Ltr. at 3).  The defendant's assertion
is based on Campanella's own admissions that he obstructed a
grand jury investigation into his criminal activities before he
was arrested in November 2002 on racketeering charges, and before
he entered into a cooperation agreement with the government.[4]  In
addition, the defendant obfuscates the substance of Campanella's

---

[4]      After he was shot by a fellow Colombo family member and
associate in July 2001, Campanella participated in a few secret
meetings with the government in Fall 2001 to explore cooperation.
He did not resume meeting with the government until after he was
indicted in Fall 2002.

Hon. Dora L. Irizzary
June 29, 2009
Page 7

prior testimony about the defendant's role in the charged double
murder attempt.  The defendant notes that Campanella has
testified that he is the sole source of the evidence about the
defendant's involvement in the 1991 attempted double murder, that
Campanella (and not the defendant) was the person who shot the
individual who was wounded during the attempt, and that
Campanella was not sure whether the other shooting victim was in
the car Campanella was shooting at.  (See Def.'s Ltr. at 3).  The
defendant omits Campanella's most pertinent testimony, that the
defendant shot into the car with him.[5]

      The defendant also claims that the Honorable Joanna
Seybert, the United States District Judge who presided over the
2007 retrial of Colombo family acting boss Alphonse Persico and
underboss John DeRoss, determined that government witness
Giovanni Floridia had committed perjury during that trial, based
on a comment made by the Judge prior to jury instructions in that
case.  (See Def.'s Ltr. at 3-4).  His assertion is meritless.
Judge Seybert rejected similar arguments made by defense counsel
in post-trial briefing in that case.  In fact, the court
specifically credited Floridia's testimony for purposes of
denying the defendants' motions for a new trial.  (See Mem. and
Order dated Nov. 24, 2008 in United States v. Alphonse Persico
and John DeRoss, 04 Cr. 911 (SJ) (Docket No. 714) at 9 (crediting
Floridia's testimony implicating DeRoss in the murder of William
Cutolo)).  Accordingly, the defendant's argument that the quality
of the evidence against him – which will include the testimony of

_____

      [5]     The defendant's further claim that it is
"interesting[]" that Campanella agreed to waive the statute of
limitations with respect to his guilty plea to a conspiracy to
murder in-aid-of racketeering charge, pursuant to 18 U.S.C. §
1959, stemming from the 1991 attempted double murder, in light of
the fact that Dionisio has been charged with the same conduct, is
also a red herring.  The constitutional basis for the indictment
in this case has been upheld by this Court, see United States v.
Dionisio, 415 F. Supp. 2d 191 (E.D.N.Y. 2006, as well as the
Second Circuit.  (See United States v. Dionisio, 503 F.3d 78 (2d
Cir. 2007), cert. denied, Dionisio v. United States, 129 S. Ct.
158, 172 L. Ed. 2d 41 (2008).  Notably, the defendant has not
been charged with a charge under Section 1959, but rather a
different charge, to wit: racketeering conspiracy pursuant to 18
U.S.C. § 1962(d), including a predicate act charging the
conspiracy to murder and the attempted double murder of the rival
Colombo faction members.

Hon. Dora L. Irizzary
June 29, 2009
Page 8

his criminal accomplices in the charged crimes - is weak should
be rejected.

    D.    The Defendant Is a Flight Risk

        As the trial process advances, Dionisio will
increasingly constitute a risk of flight.  On the current
charges, Dionisio faces up to 20 years in prison and under the
advisory Guidelines, approximately 210 to 240 months in prison.
See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn.
1994) (possibility of a "severe sentence" heightens the risk of
flight).

III. Conclusion

        For the reasons set forth above, the government
respectfully requests that the defendant's motion to modify the
conditions of his pretrial release be denied, but that the
defendant be required to provide a full and immediate financial
disclosure.


                            Respectfully submitted,

                            BENTON J. CAMPBELL
                            United States Attorney

                            /s/Nicole M. Argentieri
                      By:   /s/James D. Gatta
                            Nicole M. Argentieri
                            James D. Gatta
                            Assistant U.S. Attorneys
                            (718) 254-6232
                            (718) 254-6356


cc:  James Froccaro, Esq. (by ECF)
     Clerk of the Court (DLI) (by ECF)