**JAMES R. FROCCARO, JR.**
**Attorney at Law**
**20 Vanderventer Avenue, Suite 103W**
**Port Washington, NY 11050**
**telephone: (516) 944-5062**
**fax: (516) 944-5066**
**email: JRFESQ61@aol.com**

February 7, 2012

BY ECF & HAND DELIVERY
Hon. Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United States v. Dominick Dioinisio
04 Cr 1068 (DLI)

Dear Judge Irizarry:

This letter is submitted on behalf of Dominick Dionisio in anticipation of his sentencing before Your Honor at 9:00 a.m. on February 21, 2012.  By this letter, I am respectfully asking Your Honor to consider an alternative to incarceration in Mr. Dionisio's case.

After extensive negotiations with the government, Mr. Dionisio pled guilty to a Superseding Information which charged him with participating in a RICO conspiracy many years ago - between May of 1991 and May of 1999.  The RICO conspiracy consists of two predicate acts.  The first, that in May of 1991, he and others conspired to forcibly steal cash and checks from a person in Brooklyn.  And the second, that between August 1998 and May 1999, he and others conspired to forcibly steal marijuana from marijuana traffickers in the State of Maryland.

1

The parties estimate of the applicable Guidelines imprisonment range in the Plea Agreement is 70-87 months, based upon a total offense level of 27 and a criminal history category I.  The parties estimate is based upon the following calculations.  First, that Mr. Dionisio's total offense level for racketeering acts one is a level-22 and racketeering act two is a level-29.  Second, that the multiple racketeering act analysis results in 1-level being added, and an adjusted offense level of 30.  And, third, that 3-levels are subtracted for acceptance of responsibility.  The government will stand by the estimate provided in the Plea Agreement at sentencing and not argue for any other enhancements in Mr. Dionisio's case.

As Your Honor is no doubt well aware, the instant prosecution was commenced in the year 2004, while Mr. Dionisio was already in prison serving sentences imposed upon him in two separate prior RICO prosecutions.  Mr. Dionisio was first charged with racketeering on June 16, 1999, in a case before Judge Gershon captioned United States v. Dionisio, 99 Cr 589 (NG). The predicate acts consisted of securities fraud and money laundering of the proceeds of the securities fraud - between the years 1991 and 1999.  Judge Gershon determined that Mr. Dionisio's total offense level for the RICO charge was a level-30, and that he was in criminal history category I, resulting in a Guidelines imprisonment range of 97-121 months.  Judge Gershon sentenced Mr. Dionisio to the low end of that range, 97 months in prison.  On October 21, 2000, Mr. Dionisio began serving the 97 month prison sentence imposed by Judge Gershon.

Then, on January 31, 2001, Mr. Dionisio was charged with racketeering, again, this time in a case before Judge Raggi captioned United States v. Dionisio, 01 Cr 56 (RR).  The RICO charges consisted of the same securities fraud and money laundering of the proceeds of the securities fraud conduct that he had previously been sentenced for by Judge Gershon, and added others, namely, loansharking, conspiracy to distribute marijuana, and conspiracy to distribute MDMA.  The predicate acts in this case overlapped the same time frame as the predicate acts in the prior RICO prosecution before Judge Gershon and the enterprise was

the same.  Mr. Dionisio ultimately entered a plea of guilty to a RICO charge.  And, on June 24, 2002, Judge Raggi sentenced Mr. Dionisio to a 78 month term of imprisonment, to be served concurrently with the prison term previously imposed upon him by Judge Gershon.

Using a 5G1.3(b) Guideline analysis, Judge Raggi purposely fashioned a sentence that resulted in no additional prison time for Mr. Dionisio beyond the 97 month prison term imposed by Judge Gershon.[1]  Judge Raggi made specific findings with respect to the Guidelines calculation for the RICO charge.  First, that Mr. Dionisio's total offense level for the predicate acts were as follows - a level-32 for the securities fraud, a level-22 for the money laundering related to the securities fraud, a level-20 for the loansharking conspiracy, a level-21 for the money laundering related to loansharking, and a level 26 for the conspiracy to distribute marijuana and MDMA.  Second, that the multiple racketeering act analysis resulted in an additional 1-level being added.  And, third, that 3-levels should be subtracted for acceptance of responsibility, all resulting in a total offense level of 30.  Judge Raggi also made a finding that Mr. Dionisio was in criminal history category I, because conduct from the prior RICO prosecution before Judge Gershon was the same as in the case before her.[2]  Based upon a total offense level

---

[1] Section 5G1.3(b) of the Guidelines deals with the imposition of a sentence on a defendant subject to an undischarged term of imprisonment.  According to this Guideline, the Court should adjust for any period of imprisonment already served as a result of conduct taken into account in determining the Guidelines range for the instant offense, if the Court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.

[2] In addition to Judge Gershon and Judge Raggi, the Probation Department also found in the Presentence Investigation Reports prepared in connection with both prior RICO cases that Mr. Dionisio was in criminal history category I.  A copy of the *Criminal History* portion of the Presentence Report prepared by the Probation Department in the case before Judge Raggi is attached hereto.

of 30 and a criminal history category I, Judge Raggi determined that Mr. Dionisio's Guidelines imprisonment range was, again, 97-121 months.[3]

Judge Raggi then determined that Mr. Dionisio should be sentenced to the low end of that range, 97 months in prison, and that he was also entitled to a downward departure of 19 months, to give him credit for the time he had already spent in prison because he would not otherwise be credited for that time by the Bureau of Prisons.  (The time between October 21, 2000, the date that he surrendered for the commencement of the sentence imposed by Judge Gershon, and June 4, 2002, the date that he was sentenced by Judge Raggi.)  I have attached hereto for Your Honor's review, a copy of the **Judgment Including Sentence** issued by Judge Raggi.

Significantly, in fashioning this concurrent sentence, Judge Raggi was specifically advised by the Probation Department in paragraph 40 of the Presentence Investigation Report that the offense conduct for the conspiracy to distribute marijuana consisted of the following:

Conspiracy to Distribute Marijuana (Dionisio and Montaperto)

40.  In 1999, [Joseph] Petillo attempted to recruit [Anthony] Molinaro to pick up a 500 pound (227 kilogram) shipment of marijuana for his [Petillo's] friend.  When Molinaro declined the offer, Petillo recruited [Enrico] Montaperto, instead.  On the day of the arranged pick-up, **Dionisio** and Montaperto robbed the shipment of marijuana from the suppliers in Baltimore and did not deliver it to Petillo's friend.  The Government advised that it is unknown whether the defendants were armed during this robbery.

---

[3] Notably, Supervising U.S. Probation Officer Mark Gjelaj, who prepared the Presentence Investigation Report provided to Judge Raggi, was personally present in court during Mr. Dionisio's sentencing proceedings.  He can also confirm, if necessary, the specific Guideline findings made by Judge Raggi with respect to the predicate acts and criminal history category.

Additionally, <u>it is unknown whether **Dionisio** and Montaperto</u> <u>distributed the approximately 227 kilograms of marijuana which</u> <u>they stole</u>.

I have also attached a copy of the ***Offense Conduct*** actually provided to Judge Raggi by the Probation Department for the conspiracy to distribute marijuana in the 2002 Presentence Investigation Report. Thus, the argument that Probation has made to Your Honor now, namely, that the theft of the load of marijuana was never "considered" by Judge Raggi in fashioning an appropriate sentence for Mr. Dionisio in the prior case - is a careless argument, and also, not an accurate one. (<u>See</u> Addendum to PSR at pages 18-19)

I also take issue with the following assertions made by Probation in the Addendum provided to Your Honor.  Namely, the assertions that:

> [w]hile defense counsel implies that the marijuana robbery (racketeering act 2 in the instant offense) was the same conduct already considered in the defendant's 2002 PSR, the instant offense considers the robbery of this marijuana, while the 2002 PSR considered **only** the distribution of marijuana - clearly separate and distinct harms.  It is somewhat disingenuous to refer to a robbery and subsequent drug distribution as the same conduct.

<u>Id.</u> at page 6.

In the first instance, I have not "implied" that the conduct was the same.  Rather, I have expressly stated that the conduct was the same. Moreover, in addition to the offense conduct previously provided by Probation to Judge Raggi for her consideration in the 2002 PSR, the government also conceded to Your Honor in the context of the prior double jeopardy litigation that the offense conduct for the marijuana distribution conspiracy in the RICO prosecution before Judge Raggi <u>and</u> the marijuana robbery conspiracy in the present RICO prosecution - <u>are both based upon the same conduct</u>.

5

Finally, Mr. Dionisio was charged with RICO, again, in the year 2004, in the case before Your Honor.  The instant offense overlaps the same time, enterprise and conduct as before.  Due to the passage of more than seven years, however, Mr. Dionisio is no longer subject to the 97 month term of imprisonment.[4]  Even though he completed or discharged that sentence on January 4, 2008, the logic of Section 5G1.3(b) still applies here.  Indeed, Section 5K2.23 of the Guidelines provides that a downward departure is warranted where a defendant:

> (1) has completed serving a term of imprisonment; and
> (2) subsection (b) of Section 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.

(Emphasis supplied)

If the predicate acts Mr. Dionisio pled guilty to in the case before Your Honor had been included in the case before Judge Raggi, the 5G1.3(b) Guideline analysis would be the same, except that the two predicate acts from the case at bar would also be included in the multiple racketeering act calculation.[5]  The analysis is set forth

---

[4] As Your Honor is no doubt well aware, this delay was due to the complexity of the unique double jeopardy issues and appellate litigation resulting from the instant RICO prosecution.

[5] The predicate acts Mr. Dionisio pled guilty to in the case before Your Honor occurred in May of 1991 and between August 1998 and May 1999.  So, the Guidelines findings made by Judge Raggi should apply with equal force here in order to avoid any ex post facto issues, and also, to avoid unduly complicating the analysis.  Clearly, no one is suggesting that the findings made by Judge Raggi were wrong.

6

below.

| | |
|---|---|
| Loansharking Conspiracy - | Level 20 |
| Money Laundering Conspiracy - | Level 21 |
| Distribution of Marijuana and MDMA - | Level 26 |
| Securities Fraud - | Level 32 |
| Money Laundering - | Level 22 |

**plus**

| | |
|---|---|
| Yeshiva Robbery - | Level 22 |
| Marijuana Robbery Conspiracy - | Level 29 |

The multiple racketeering act analysis would then be as follows. The group with the highest offense level would be the securities fraud, a level-32, and the total number of units would be 2 (1 unit for the group with the highest offense, and 1 additional unit for the group that is 1 to 4-levels less serious, namely, the robbery conspiracy), resulting in 2-levels being added. Then, 3-levels would be subtracted for acceptance of responsibility, resulting in a total offense level of 31.[6] But, of course, Mr. Dionisio would also then have been eligible for a 1-level reduction for participating in the global disposition of that multi-defendant case, reducing the total offense level to 30. And, his criminal history category would be the same as it was before Judge Raggi, category I. This would place Mr. Dionisio within the 97-121 month range, again, where Judge

---

[6] This analysis, of course, does not consider the "uniqueness" of the present RICO charge, where the theft of marijuana is now charged as a conspiracy to rob marijuana with a total offense level of 29, rather than a substantive theft of marijuana where the Guidelines would be lower. And, the same conduct was previously charged in the prior prosecution before Judge Raggi as a conspiracy to distribute marijuana, where the Guidelines were also lower, a level-26. The difference is significant because if the total offense level for this conduct was below a level-28, then only 1-level, not 2-levels, would be added in connection with the multiple racketeering act analysis now.

Raggi previously fashioned a sentence which ensured that he would do no additional prison time beyond the previously imposed 97 month sentence.

Without attempting to diminish the gravity of the predicate act in the case at bar where Mr. Dionisio, unarmed, forcibly took cash and checks from an individual in Brooklyn with others nearly 21 years ago,[7] this act, if included in the analysis, would have had no impact upon the Guidelines calculation before Judge Raggi, because it is 9 or more levels less serious than the group with the highest offense, namely, the securities fraud.  Moreover, the sentence actually imposed by Judge Raggi, a 78 month concurrent sentence for conduct including the theft of marijuana, is within the range specifically contemplated by the parties in the Plea Agreement here.  Clearly, this all tends to support my request that Mr. Dionisio should not be sent back to prison again.  And, as set forth above, support for this request is found within the Guidelines, themselves.

As Your Honor is no doubt well aware, however, since Mr. Dionisio was last sentenced by Judge Raggi in the year 2002, the Guidelines were deemed by the U.S. Supreme Court to no longer be mandatory, and are now advisory and but one factor for the Court to consider in formulating an appropriate sentence under Title 18 USC 3553(a).  I also know that Your Honor is familiar with Gall v. United States, 128 S.Ct. 595, 602 (2007), where the U.S. Supreme Court emphasized that 3553(a) specifically "directs judges to consider sentences other than imprisonment."  And, that a probationary sentence can be structured to amount to a "substantial restriction of freedom" and meet all of the purposes of sentencing.

---

[7] Mr. Dionisio was 21 years old at the time of this offense.  He is now 42 years old.

In <u>Gall</u>, the Supreme Court upheld as "reasonable" under 3553(a), a sentence of probation imposed upon defendant Brian Michael Gall, where he pled guilty to participating in an enterprise that distributed ecstasy throughout the community. As set forth below, I respectfully submit that a sentence of probation or some other alternative to incarceration would also constitute a "reasonable" sentence under the unique facts of Mr. Dionisio's case.

There are many other mitigating factors for Your Honor to consider in fashioning an appropriate sentence for Mr. Dionisio, other than the fact that he has already served a very substantial prison sentence for conduct which even the Probation Department has acknowledged "in large part, has been factored into the instant offense." <u>See</u> Addendum to PSR at the top of page 18. And, that he has already successfully completed a three-year term of supervised release related to that conduct. Significantly, since his release from prison more than four years ago, Mr. Dionisio has also proven to himself, to his loved ones, and to this Court, that he is rehabilitated <u>and</u> can be a law-abiding and productive member of society.

Mr. Dionisio was released on bail in this matter on January 8, 2008. He was initially released on strict conditions, including 24 hour house arrest with an electronic monitoring bracelet <u>and</u> a condition that he not associate with members of organized crime. He has complied with all of the conditions of his release. Moreover, since he was released, Your Honor has entrusted him with more and more freedom in the community <u>and</u> he has not betrayed that trust.

First, Your Honor allowed Mr. Dionisio to leave his residence to work at a famous local pizzeria called "Lucali's." Then, more than two years ago, Your Honor removed the house arrest and electronic monitoring conditions altogether, and Mr. Dionisio has continued to do well in the community ever since. For example, Mr. Dionisio was recently promoted in the workplace. He is now the manager of a second or sister pizzeria opened in Brooklyn by one of the owners called "Giuseppina's

9

Brick Oven Pizzeria." And, he works there nearly everyday.

Mr. Dionisio has displayed many other redeeming qualities. For example, after his release he went to live with and care for his elderly father and mentally challenged brother. The love and care that Mr. Dionisio provided to his father, who recently passed, and continues to provide to his handicapped brother, has been nothing short of extraordinary. Mr. Dionisio's only affiliation and devotion now is to his own family, meaning his blood relatives, <u>not</u> the Columbo Crime Family.

Mr. Dionisio's father suffered from a variety of very serious ailments, including dementia, prior to his passing. Mr. Dionisio took his father to well over 100 documented medical visits to the Veterans Affairs Medical Center in Brooklyn, and also maintained vigil over him during numerous hospital stays and long nights at home. I have attached hereto for Your Honor's review, a copy of a computer print-out from the Department of Veterans Affairs confirming Mr. Dionisio's father, Joseph's, medical appointments and hospital stays between March of 2008 and July of 2011.

I have been Mr. Dionisio's lawyer for more than ten years now. After all this time, I have also come to consider him a friend. I can tell Your Honor that Mr. Dionisio has never gotten over the deep sense of regret and guilt he feels for not being there for his mother, who passed away, while he was imprisoned. Not surprisingly, the first travel request that he asked me make when he was released was that he be permitted to visit his mother's grave. I drove him directly to there from the courthouse the day he was released.

Since both of Mr. Dionisio's parents have now passed, he is the sole caretaker for his older brother, Joseph, Jr.. Among other things, his brother is mentally challenged and also suffers from a seizure disorder. When his brother's treating physician, the Chief of Neurology at Lutheran Medical Center, Dr. Roger W. Davenport, learned that Mr. Dionisio could be incarcerated and absent from his brother's life, he immediately asked

10

for the opportunity to write to the Court. Dr. Davenport explained his concerns in a letter to Your Honor, set forth in pertinent part, below:

> I have cared for Dominick's brother, Joseph Dionisio, for many years. Joseph was originally seen in this office in the company of his mother who subsequently developed Alzheimer's and passed away. His care then fell to his brother Dominick and to Joseph's father who passed away recently due to a long-standing cardiac condition.
>
> Joseph has a seizure disorder which is not completely controlled and he is also mildly mentally retarded. He cannot administer his own medications without supervision as he often forgets or becomes rebellious about taking his meds. He also cannot be left alone, nor can he be expected to carry out necessary daily tasks without Dominick to watch over him and as such has become very dependent upon Dominick whom he adores and who is the only person at this time capable of making Joseph do those tasks of daily life that protect his life. Having suffered through the early demise of his mother and father, Joseph would be devastated and I fear would not do well if his brother were to be removed from his life. Dominick's concern and care for his brother is exemplary and I often tell him so.
>
> I would ask that this letter expressing my concerns be taken into consideration. It would be a significant hardship for Joseph to lose his brother Dominick after losing the parents who had protected him in his life.

See letter dated January 20, 2012, of Dr. Roger Davenport, Chief of Neurology at Lutheran Medical Center, attached hereto.

Since his release from prison, Mr. Dionisio has also entered into a loving and stable relationship with a woman, Carrie O'Toole, whom he hopes to marry in the near future.  I have attached hereto for Your Honor's review, a copy of a letter from Ms. O'Toole to Your Honor. Ms. O'Toole emphasized to Your Honor in her letter that Mr. Dionisio is a "changed man" since his release from prison.  And, that he has been a "wonderful role model and friend" to her three young children. According to Ms. O'Toole, even her own family members with law enforcement backgrounds "have grown to love and accept" Mr. Dionisio. As Ms. O'Toole explained in her letter to Your Honor:

> Dominick has become like family now.  He is a respectful and giving person.  I believe that he is rehabilitated and knows the value of being a loving family man as well as a contributing member of his community.  We love and need Dominick.  I pray that Your Honor will be lenient with him at his sentencing.  He has learned his lesson.

And, finally, the U.S. Pretrial Services Agency, responsible for supervising Mr. Dionisio for the past four years, has also changed its opinion of him since he was released from prison.  Significantly, the Pretrial Services Agency has indicated to Your Honor now that:

> Given that the defendant's employment and residence have been verified, compliance with bond conditions for four years, successful completion of his supervised release term, and no reported additional criminal activity, Pretrial believes the risks of flight and danger [previously identified] have been mitigated.

See ECF Document 102 at page 2 (Reassessment of Risks).

For all of the foregoing reasons, I am respectfully asking Your Honor to sentence Mr. Dionisio to an alternative to incarceration in this case.


Respectfully submitted,

/JRF/

James R. Froccaro, Jr.


JRF:tp
Encls.

## PART B.  THE DEFENDANT'S CRIMINAL HISTORY

### Convictions/Adjudications

| | Date of Arrest | Offense/Court | Disposition | Guidelines/ Points |
|---|---|---|---|---|
| 151. | 8/24/93 (Age 23) | Grand Larceny/ Supreme Court Brooklyn, NY | 11/29/94 Conditional Discharge | 4A1.1(c) 4A1.2(e)(2) |
| | | | | 1 |

A police report reflects that on August 24, 1993, on 73rd Street and 13th Avenue, Brooklyn, the defendant pushed the driver of a taxicab as he was entering the cab. The defendant then fled the scene, and did not pay the required fare.  Records further reflect that after having been arrested, the defendant offered a police officer $1,000, while being processed at the 68th precinct station house.

| | Date of Arrest | Offense/Court | Disposition | Guidelines/ Points |
|---|---|---|---|---|
| 152. | 06/16/99 (Age 29) | Racketeering (Securities Fraud & Money Laundering); U.S. District Court ED/NY, Brooklyn Gershon, Nina | 11/21/00 97 months custody 3 years S/R $10,000,000 Restitution | 4A1.2(a)(1) 0 |

## Criminal History Computation

153.    The above conviction results in 1 criminal history point.  According to the Sentencing Table (Chapter 5, Part A), 1 criminal history point establishes a criminal history category of I.

## Other Arrests

| | Date of Arrest | Offense/Court | Disposition |
|---|---|---|---|
| 154. | 3/14/98 (Age 28) | Promoting Gambling 2 Possession of Gambling Devices/ Supreme Court, Brooklyn, NY | Date Unknown Dismissed |

This case was dismissed and subsequently sealed.  Records concerning this case are unavailable.

155.    During a prior presentence interview, the defendant also reported that he was arrested in 1990 or 1991, in Staten Island.  According to the defendant, he was stopped by police driving an automobile that reportedly did not have a vehicle identification number affixed to it.  He advised that these charges were ultimately dismissed.  It should be noted that this arrest does not appear on the defendant's NCIC report.  We were unable to locate any records concerning this arrest.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUN 07 2002 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

...................................................................

# UNITED STATES OF AMERICA

**JUDGMENT INCLUDING SENTENCE FOR OFFENSES COMMITTED ON OR AFTER NOVEMBER 1, 1987 CASE NO.: CR 01-56(S5) DEFT # 5 (RR)**

VS.

# DOMINICK DIONISIO

...................................................................

| Amy Walsh | Alan Sherman | James Froccaro |
|---|---|---|
| Assistant United States Attorney | Court Reporter | Defendant's Attorney |

The defendant   **DOMINICK DIONISIO**   pleaded guilty to count 1 of the fifth superseding indictment. Accordingly, the defendant is ADJUDGED guilty of such Count(s), which involve the following offenses:

| TITLE AND SECTION | NATURE AND OFFENSE | COUNT NUMBERS |
|---|---|---|
| 18:1962(c) | RACKETEERING – | 1(S5) |

The defendant is sentenced as provided in pages 2 through 5 of the Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1988.

__X__   The defendant is advised of his/her right to appeal within ten (10) days.

__ __   The defendant has been found not guilty on count(s)    and discharged as to such count(s).

__X__   **Open counts are dismissed on the motion of the United States.**

__ __   The mandatory special assessment is included in the portion of Judgment that imposes a fine.

__X__   **It is ordered that the defendant shall pay to the United States a special assessment of $100.00 which shall be due immediately.**

It is further **ORDERED** that the defendant shall notify the United States Attorney for this District within 30 days of any change of residence or mailing address until all fines, restitution, costs and special assessments imposed by this Judgment are fully paid.

57370-053
Defendant's USM #/ Date of Birth
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
Defendant's Soc. Sec. Number

**June 4, 2002**
Date of Imposition of sentence

*Reena Raggi*
REENA RAGGI, U.S.D.J.

*June 5, 2002*
Date of signature
A TRUE COPY ATTEST
ROBERT C. HEINEMANN, CLERK
BY: EILEEN LEVINE, DEPUTY CLERK

A TRUE COPY
ATTEST
DATED June 7 20 02
ROBERT C. HEINEMANN
CLERK
BY _____
DEPUTY CLERK

1680

DEFENDANT: DOMINICK DIONISIO
CASE NUMBER: CR 01-56(S5) DEFT # 5 (RR)
JUDGMENT-PAGE 2 OF5

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:   78 months.  The prison term imposed shall run concurrent with the prison term imposed by U.S. District Judge Nina Gershon in CR 99-589.

___     THE DEFENDANT ASKS TO BE HOUSED AT A FEDERAL CORRECTIONAL FACILITY CLOSE TO THE NEW YORK AREA.  THE COURT NOTES THIS SO THAT THE BUREAU OF PRISONS CAN ACCOMMODATE HIS REQUEST IF SPACE PERMITS..

_____     The defendant is remanded to the custody of the United States Marshal.

_____     The defendant shall surrender to the United States Marshal for this District.

_____     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.

　　　　　___ ___-12:00 noon._____:
　　　　　___     As notified by the United States Marshal.
　　　　　___     As notified by the Probation Office.

### RETURN

I have executed this Judgment as follows:

_____

_____

_____

_____

_____

Defendant delivered on _____ to _____ at _____ with a certified copy of this Judgment.

_____
United States Marshal

By:_____

DEFENDANT:     **DOMINICK DIONISIO**
CASE NUMBER: **CR 01-56(S5) DEFT # 5 (RR)**
JUDGMENT-PAGE 3 OF 5

## SUPERVISED RELEASE

Upon release from Imprisonment, the defendant shall be on supervised release for a term of 3 years. The supervised release term imposed shall run concurrent with the supervised release term imposed by Judge Nina Gershon in CR 99-589 for a total term of supervised release of 3 years.

**The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.**

While on supervised release, the defendant shall not commit another Federal, State, or Local crime and shall comply with the standard conditions that have been adopted by this Court (Seaforth on the following page).

The defendant shall not illegally possess a controlled substance.

If this Judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

> __    The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

DEFENDANT:   DOMINICK DIONISIO
CASE NUMBER: **CR 01-56(S5) DEFT # 5 (RR)**
JUDGMENT-PAGE 4 OF 5

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer;

2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

8) The defendant shall support his or her dependents and meet other family responsibilities;

5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons:

6) The defendant shall notify the probation officer within 10 days prior to any change in residence or employment;

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a Physician;

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: DOMINICK DIONISIO
CASE NUMBER: CR 01-56(S5) DEFT # 5 (RR)
JUDGMENT-PAGE 5 OF 5

## CRIMINAL MONETARY PENALTIES

The defendant shall pay restitution in the  full amount of loss due immediately.

| COUNT | ASSESSMENT | FINE | RESTITUTION |
|-------|------------|------|-------------|
| 1(S5) | $ 100.00 | ------- | --------- |

---

### RESTITUTION

_____The determination of restitution is deferred in a case brought  under Chapters 109A, 110, 110A, and 113A of the Title 18 for offenses committed on or after 9/13/1998, until _____. an amended judgment in  a Criminal case will be entered after such determination.

_____The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| NAME OF PAYEE | TOTAL AMOUNT LOSS | AMOUNT OF RESTITUTION | INSTALLMENTS |
|---------------|-------------------|------------------------|--------------|

TOTALS:_____

Findings for the total amount of losses are required under Chapters 109A, 110,110A, 113A of the Title 18 for offenses committed on or after September 13, 1998.

DEFENDANT: DOMINICK DIONISIO
CASE NUMBER: CR 01-56(S5) DEFT # 5 (RR)

## STATEMENT OF REASONS

\_\_\_\_\_   The Court adopts the factual findings and guideline application in the presentence report.

\_\_X\_\_   The Court adopts the factual findings and guideline application in the presentence report except:
Amendments to the report

1)      3 point Credit for acceptance of responsibility

2)      the Court will not enhance 2 points for use of sophisticated means to commit this crime.

3)

## GUIDELINE RANGE DETERMINATION BY THE COURT

Total Offense Level:      \_\_\_30\_\_\_\_

Criminal History Category:      \_\_\_I\_\_\_

Imprisonment Range:   \_97-121 months\_\_\_\_

Supervised Release Range:      \_2-3 years_____

Fine Range: $\_15,000.00\_\_\_      TO      $\_150,000.00\_\_\_\_\_

Restitution Range: $_____ TO      $_____
Special Assessment- $ 100.00

## DEPARTURES FROM THE GUIDELINES RANGE

\_\_X\_\_   The sentence is within the guideline range, that range DOES NOT EXCEED 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.
OR

\_\_\_\_\_   The sentence is within the guideline range, that range EXCEEDS 24 months, and the sentence is imposed for the following reasons:

\_\_\_\_\_   The Court makes a DOWNWARD DEPARTURE pursuant to U.S.S.G. Section 5K1.1.

\_\_\_\_\_   Other reasons for departure:

### Conspiracy to Distribute Marijuana (**Dionisio** and Monteperto)

40.    In 1999, Petillo attempted to recruit Molinaro to pick up a 500 pound (227 kilograms) shipment of marijuana in Baltimore, Maryland, for his (Petillo's) friend. When Molinaro declined the offer, Petillo recruited Monteperto instead.  On the day of the arranged pick-up, **Dionisio** and Monteperto robbed the shipment of marijuana from the suppliers in Baltimore and did not deliver it to Petillo's friend. The Government advised that it is unknown whether the defendants were armed during this robbery. Additionally, it is unknown whether Dionisio and Monteperto distributed the approximately 227 kilograms of marijuana which they stole.



**DEPARTMENT OF VETERANS AFFAIRS**
**NEW YORK HARBOR HEALTHCARE SYSTEM**

In Reply Refer To:

October 7, 2011

Re: Dionisio, Joseph Anthony

To whom it may concern:

Dear Sir/Madam

This is to inform you that Mr. Joseph Dionisio  was an inpatient at the St. Albans VA Extended Care Center located at 179th Street and Linden Blvd., St Albans, Queens New York 11412, from 5/31/11 to 6/29/11 when he was transferred to a community hospital..  Prior to that he was an inpatient at the Brooklyn  VA from 5/11/11 to the date of admission here at St Albans VA.

If you have any questions please feel free to call me at (718) 526-1000 ext. 2353

Yours truly,

Winsome Dyer LMSW
Medical Social Worker

**Medical Centers**

**Brooklyn Campus**
800 Poly Place
Brooklyn, NY 11209
(718) 836-6600

**New York Campus**
423 E. 23rd Street
New York, NY 10010
(212) 686-7500

**Primary & Extended Care Center**

**St. Albans Campus**
179th St. & Linden Blvd.
St. Albans, NY 11425
(718) 526-1000

**Healthcare Centers**

**Chapel Street Center**
40 Flatbush Avenue Ext.
8th Floor
Brooklyn, NY 11201
(718) 439-4300

**Harlem Center**
55 W. 125th Street
11th Floor
New York, NY 10027
(212) 828-5265

**SoHo Center**
245 W. Houston Street
New York, NY 10014
(212) 337-2569

**Staten Island Center**
21 Water Street
Staten Island, NY 10304
(718) 630-3550

New York Harbor Healthcare System - Brooklyn
800 Poly Place
Mail Stop: 136D
Brooklyn, NY 11209

# DEPARTMENT OF VETERANS AFFAIRS

DATE: 12/27/2011
In Reply Refer To: 136D
SSN: 0144

**DOMINICK DIONISIO
6316 15TH AVENUE
BROOKLYN, NY 11219**

RE: ROI Request for JOSEPH ANTHONY DIONISIO

Dear DOMINICK DIONISIO:

This individually identifiable information is privileged. Its confidentiality should be maintained along with appropriate security safeguards to protect against individual harm (identity theft), embarrassment, or inconvenience.

Copy of medical information.

Sincerely,

DAWNMARIE NEVINS
Chief, Health Administration Service

**Prepared by: CHARISSE TANYETTA WALKER - Release of Information**



**DEPARTMENT OF VETERANS AFFAIRS**
**NEW YORK HARBOR HEALTHCARE SYSTEM**

In Reply Refer To: 136/D

**Medical Centers**

**Brooklyn Campus**
800 Poly Place
Brooklyn, NY 11209
(718) 836-6600

**New York Campus**
423 E. 23rd Street
New York, NY 10010
(212) 686-7500

RE: Dionisio, Joseph
(0144)

**Primary & Extended
Care Center**

**St. Albans Campus**
179th St. & Linden Blvd
St. Albans, NY 11425
(718) 526-1000

• December 27, 2011

To Whom It May Concern:

This letter is to verify that Mr. Dionisio was admitted and discharged from
the Brooklyn VAMC on several occasions. Below is a listing of the dates:

**Healthcare Centers**

**Chapel Street Center**
40 Flatbush Avenue Ext.
8th Floor
Brooklyn, NY 11201
(718) 439-4300

| ADMITTED | DISCHARGED |
|----------|------------|
| 6/2/2010 | 6/7/2010 |
| 3/17/2011 | 3/21/2011 |
| 4/27/2011 | 4/28/2011 |
| 5/11/2011 | 5/31/2011 |

**Harlem Center**
55 W. 125th Street
11th Floor
New York, NY 10027
(212) 828-6285

**SoHo Center**
245 W. Houston Street
New York, NY 10014
(212) 337-2589

Mr. Dionisio medical appointments from January 2008 to June 2011 are also
enclosed.

**Staten Island Center**
21 Water Street
Staten Island, NY 10304
(718) 630-3550

If you have any questions, please contact release of information at (718) 836-
6600 x3188.

Sincerely,

DawnMarie Nevins
Chief of Health Administration

*Department of Veterans Affairs
V A Medical Center
800 Poly Place
Brooklyn, NY 11209*

APPOINTMENTS FOR: DIONISIO,JOSEPH ANTHON   0144          PRINTED: 12/27/2011@14:45

Mar 05, 2008  2:00 PM (30 MINUTES)   ZZBK-C-STERN/ACCESS

Mar 05, 2008  2:40 PM (20 MINUTES)   BK-EYE 2

Mar 24, 2008  1:30 PM (20 MINUTES)   ZZBK-PC-E-OLAFISOYE/POLJAK
    *** CANCELLED BY NELSON,MICHELLE DEES ***

Mar 27, 2008 11:00 AM (60 MINUTES)   ZZBK-NEW PATIENT ORIENT 9FL

Mar 28, 2008  1:00 PM (30 MINUTES)   ZZBK-URGENT CARE

Apr 16, 2008  1:30 PM (30 MINUTES)   ZZBK-E-CARTWRI/PASQ(PC/MED:B)

May 02, 2008 12:00 PM (30 MINUTES)   ZZBK-3RD FL/SONO LANCE

May 12, 2008  9:00 AM (20 MINUTES)   BK-PM&R CAI 2FL

May 19, 2008  8:30 AM (30 MINUTES)   BK-PM&R PT/INITIAL EVALUATION

May 30, 2008  1:15 PM (45 MINUTES)   BK-PM&R PT 2FL

Jun 06, 2008  1:15 PM (45 MINUTES)   BK-PM&R PT 2FL

Jun 13, 2008  1:15 PM (45 MINUTES)   BK-PM&R PT 2FL
    *** CANCELLED BY GIABIA,JAMIE MELANIE ***

Jul 23, 2008  2:30 PM (30 MINUTES)   ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Jul 24, 2008  1:00 PM (30 MINUTES)   ZZBK-E-ENE,A/PASQ(PC/MED:B)
    *** CANCELLED BY KEARNEY,SHARON D ***

Jul 30, 2008  1:00 PM (30 MINUTES)   ZZBK-E-LIU/PASQ(PC/MED:B)
    *** CANCELLED BY KEARNEY,SHARON D ***

Aug 06, 2008  9:00 AM (20 MINUTES)   BK-PM&R CAI 2FL

Aug 13, 2008 10:40 AM (20 MINUTES)   BK-B-UROLOGY NEW PATIENT

Sep 03, 2008  2:30 PM (30 MINUTES)   ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Sep 05, 2008 10:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Sep 05, 2008  1:00 PM (30 MINUTES)   BK-EYE 2
    *** CANCELLED BY POWELL,CAROLINE B ***

Sep 10, 2008 10:00 AM (20 MINUTES)   BK-EYE 2

Sep 10, 2008 11:00 AM (20 MINUTES)   ZZBK-PCT-E-NURSING

Sep 17, 2008  1:30 PM (20 MINUTES)   ZZBK-PCT-E-NURSING

Sep 22, 2008 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Sep 22, 2008 11:00 AM (30 MINUTES)   BK-UROLOGY NC 1ST FL
    *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Sep 22, 2008  2:20 PM (20 MINUTES)   BK-ENT

**Department of Veterans Affairs**
**V A Medical Center**
**800 Poly Place**
**Brooklyn, NY 11209**

```
Sep 29, 2008 11:30 AM (30 MINUTES)   ZZ-A-ACCESS/SZABO

Oct 06, 2008  9:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Oct 20, 2008 11:30 AM (60 MINUTES)   BK-AUDIO/TONG

Oct 29, 2008  2:30 PM (30 MINUTES)   ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Nov 06, 2008  9:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Nov 18, 2008 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
  *** CANCELLED BY FURNARI,MAUREEN E ***

Nov 18, 2008 11:00 AM (30 MINUTES)   BK-UROLOGY NC 1ST FL
  *** CANCELLED BY FURNARI,MAUREEN E ***

Dec 11, 2008  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
  *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Dec 12, 2008 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Dec 18, 2008  8:15 AM (15 MINUTES)   ZZBK-B-ORTHO DOD/ER

Dec 30, 2008  1:00 PM (15 MINUTES)   ZZBK-B-ORTHO SPORTS MEDICINE
  *** CANCELLED BY ORTIZ,JUDITH ***

Jan 06, 2009  2:15 PM (15 MINUTES)   ZZBK-B-ORTHO SPORTS MEDICINE

Jan 12, 2009  9:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Jan 21, 2009 10:40 AM (20 MINUTES)   BK-PM&R NG 2FL

Jan 30, 2009 11:00 AM (30 MINUTES)   BK-PM&R OT/INITIAL EVALUATION

Feb 02, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 04, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 09, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 10, 2009 11:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Feb 11, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 18, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 23, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Feb 25, 2009  1:15 PM (15 MINUTES)   BK-ELIGIBILTY-X
  *** NO-SHOW ***

Feb 25, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Mar 06, 2009  1:00 PM (30 MINUTES)   BK-ELIGIBILTY-X
  *** CANCELLED BY CIRNIGLIARO,MARYANN ***

Mar 06, 2009  1:40 PM (20 MINUTES)   BK-EYE 2

Mar 06, 2009  2:34 PM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
```

```
Mar 18, 2009  1:30 PM (30 MINUTES)   ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Apr 06, 2009  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

May 11, 2009 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

May 13, 2009  1:15 PM (30 MINUTES)   BK-PM&R PT 2FL
   *** CANCELLED BY WILSON,KEZIA M ***

Jun 01, 2009  8:20 AM (20 MINUTES)   BK-PM&R RACINE

Jun 01, 2009 10:00 AM (30 MINUTES)   ZZBK-PROSTHETICS-GOOCH

Jun 15, 2009 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Jun 15, 2009 11:00 AM (30 MINUTES)   ZZBK-PROSTHETICS-GOOCH

Jun 18, 2009  8:30 AM (30 MINUTES)   ZZBK-3RD FL/SONO DIANA

Jul 01, 2009  1:00 PM (30 MINUTES)   ZZBK-E-BRUCKER/PASQ(PC/MED:B)
   *** CANCELLED BY MCPHERSON,STEPHONIA ***

Jul 15, 2009  2:30 PM (30 MINUTES)   ZZBK-E-LIU/PASQ(PC/MED:B)

Jul 20, 2009 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Jul 31, 2009  2:00 PM (15 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL

Aug 10, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT/INITIAL EVALUATION

Aug 12, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Aug 17, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Aug 20, 2009  2:00 PM (30 MINUTES)   BK-PM&R OT 2ND FL

Aug 20, 2009  2:30 PM (30 MINUTES)   BK-PM&R PT/INITIAL EVALUATION

Aug 24, 2009  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Aug 24, 2009 10:15 AM (45 MINUTES)   BK-PM&R OT 2ND FL

Aug 24, 2009 11:00 AM (45 MINUTES)   BK-PM&R PT 2FL

Aug 26, 2009  1:15 PM (45 MINUTES)   BK-PM&R OT 2ND FL

Aug 26, 2009  2:00 PM (45 MINUTES)   BK-PM&R PT 2FL

Aug 31, 2009 10:15 AM (45 MINUTES)   BK-PM&R OT 2ND FL

Aug 31, 2009 11:00 AM (45 MINUTES)   BK-PM&R PT 2FL

Sep 02, 2009  1:15 PM (45 MINUTES)   BK-PM&R OT 2ND FL

Sep 02, 2009  2:00 PM (45 MINUTES)   BK-PM&R PT 2FL

Sep 09, 2009  2:00 PM (45 MINUTES)   BK-PM&R PT 2FL
   *** CANCELLED BY SOLOW,SUSAN E ***
```

```
Sep 11, 2009  9:30 AM (45 MINUTES)    BK-PM&R PT 2FL

Sep 11, 2009  9:40 AM (20 MINUTES)    BK-PM&R NG 2FL

Sep 14, 2009 10:00 AM (30 MINUTES)    BK-PM&R OT 2ND FL

Sep 14, 2009 11:00 AM (45 MINUTES)    BK-PM&R PT 2FL

Sep 16, 2009  1:00 PM (20 MINUTES)    BK-EYE 2

Sep 16, 2009  2:00 PM (45 MINUTES)    BK-PM&R PT 2FL

Sep 21, 2009  9:45 AM (45 MINUTES)    BK-PM&R OT 2ND FL

Sep 21, 2009 10:30 AM (45 MINUTES)    BK-PM&R PT 2FL

Sep 23, 2009  1:00 PM (45 MINUTES)    BK-PM&R OT 2ND FL

Sep 23, 2009  2:00 PM (45 MINUTES)    BK-PM&R PT 2FL

Sep 24, 2009  9:30 AM (30 MINUTES)    BK-GU CYSTO NEW BLDG 1ST FLR

Sep 28, 2009  9:45 AM (45 MINUTES)    BK-PM&R OT 2ND FL

Sep 28, 2009 10:30 AM (45 MINUTES)    BK-PM&R PT 2FL

Sep 30, 2009  1:00 PM (45 MINUTES)    BK-PM&R OT 2ND FL

Sep 30, 2009  2:00 PM (45 MINUTES)    BK-PM&R PT 2FL

Oct 05, 2009  9:45 AM (45 MINUTES)    BK-PM&R OT 2ND FL

Oct 05, 2009 10:30 AM (45 MINUTES)    BK-PM&R PT 2FL

Oct 07, 2009  1:00 PM (45 MINUTES)    BK-PM&R OT 2ND FL

Oct 07, 2009  2:00 PM (45 MINUTES)    BK-PM&R PT 2FL

Oct 14, 2009  1:00 PM (45 MINUTES)    BK-PM&R OT 2ND FL
     *** CANCELLED BY FISHELIS,LEAH ***

Oct 14, 2009  2:00 PM (45 MINUTES)    BK-PM&R PT 2FL
     *** CANCELLED BY ELBERT,MARINA ***

Oct 16, 2009  9:30 AM (45 MINUTES)    BK-PM&R PT 2FL

Oct 16, 2009 10:30 AM (45 MINUTES)    BK-PM&R OT 2ND FL

Oct 19, 2009  9:45 AM (45 MINUTES)    BK-PM&R OT 2ND FL
     *** CANCELLED BY FISHELIS,LEAH ***

Oct 21, 2009  3:30 PM (30 MINUTES)    ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Oct 26, 2009  9:00 AM (30 MINUTES)    BK-GU CYSTO NEW BLDG 1ST FLR

Nov 30, 2009 10:00 AM (30 MINUTES)    BK-GU CYSTO NEW BLDG 1ST FLR

Dec 28, 2009  9:20 AM (20 MINUTES)    BK-EYE 2

Dec 31, 2009 10:00 AM (30 MINUTES)    BK-GU CYSTO NEW BLDG 1ST FLR
```

```
Jan 04, 2010  9:30 AM (30 MINUTES)  BK-GU CYSTO NEW BLDG 1ST FLR
 *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Feb 02, 2010 10:00 AM (30 MINUTES)  BK-GU CYSTO NEW BLDG 1ST FLR

Feb 24, 2010  1:30 PM (30 MINUTES)  ZZBK-E-BRUCKER/PASQ(PC/MED:B)

Mar 01, 2010  9:30 AM (30 MINUTES)  BK-GU CYSTO NEW BLDG 1ST FLR
```

```
Mar 09, 2010  9:30 AM (30 MINUTES)  BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Mar 15, 2010  3:00 PM (30 MINUTES)   BK-3RD FL/SONO TRACY

Mar 15, 2010  3:30 PM (30 MINUTES)   BK-3RD FL/SONO TRACY

Apr 05, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

May 06, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

May 10, 2010  1:30 PM (30 MINUTES)   ZZBK-URGENT CARE

May 28, 2010 10:20 AM (20 MINUTES)   BK-EYE 2

May 28, 2010  1:20 PM (20 MINUTES)   BK-EYE 2
   *** CANCELLED BY AHMED,SHMIALA ***

Jun 07, 2010 10:00 AM (20 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY FURNARI,MAUREEN E ***

Jun 09, 2010  2:00 PM (30 MINUTES)   ZZBK-E-LIU/PASQ(PC/MED:B)

Jun 16, 2010 11:00 AM (30 MINUTES)   BK-D-RHEUMATOLOGY

Jul 01, 2010 10:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Jul 09, 2010 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Jul 21, 2010  1:30 PM (30 MINUTES)   BK-PCT-E-MUNSHI/PASQUARIELLO

Aug 03, 2010 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Aug 12, 2010  9:00 AM (30 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL
   *** CANCELLED BY FARAH,JULIO ENRIQUE ***

Aug 20, 2010  1:45 PM (30 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL
   *** CANCELLED BY AYAR,FARUK ***

Aug 27, 2010  2:15 PM (30 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL
   *** CANCELLED BY FARAH,JULIO ENRIQUE ***

Sep 02, 2010 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** NO-SHOW ***

Sep 07, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Sep 16, 2010 10:00 AM (30 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL
   *** CANCELLED BY WEINER,LINDA ***

Sep 24, 2010  2:00 PM (15 MINUTES)   BK-PM&R SHOE CLINIC 2ND FL

Sep 24, 2010  2:45 PM (15 MINUTES)   BK-PROS/CHASSAGNE

Sep 29, 2010  3:00 PM (30 MINUTES)   BK-D-RHEUMATOLOGY

Oct 06, 2010  1:30 PM (30 MINUTES)   BK-PCT-E-MUNSHI/PASQUARIELLO
```

```
Oct 12, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Nov 15, 2010 10:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY FURNARI,MAUREEN E ***

Nov 16, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** NO-SHOW ***

Nov 18, 2010  9:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Dec 01, 2010  2:00 PM (30 MINUTES)   BK-PCT-E-MUNSHI/PASQUARIELLO

Dec 20, 2010  9:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Jan 06, 2011  1:15 PM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Jan 26, 2011  3:30 PM (30 MINUTES)   BK-D-RHEUMATOLOGY
   *** CANCELLED BY WEINER,LINDA ***

Feb 08, 2011 11:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY GIOVANNUCCI,ELEANOR ***

Feb 11, 2011 10:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Feb 22, 2011  9:30 AM (15 MINUTES)   BK-ELIGIBILTY-X

Feb 22, 2011 10:30 AM (30 MINUTES)   BK-D-RHEUMATOLOGY

Mar 18, 2011 11:00 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY FURNARI,MAUREEN E ***

Apr 06, 2011  2:30 PM (30 MINUTES)   BK-PCT-E-OBASARE/PASQUARIELLO

Apr 13, 2011 11:30 AM (30 MINUTES)   BK-HEM/ONC KHOKHAR
   *** CANCELLED BY KHOKHLOVA,LYUBOV ***

Apr 18, 2011 10:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY FURNARI,MAUREEN E ***

Apr 19, 2011 10:30 AM (30 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR

Apr 19, 2011  1:30 PM (30 MINUTES)   BK-3RD FL/SONO YANA

Apr 27, 2011 10:30 AM (30 MINUTES)   BK-HEM/ONC KHOKHAR

May 05, 2011 10:30 AM (30 MINUTES)   BK-MASTAN (HEM/ONC) 8E

May 10, 2011  9:30 AM (30 MINUTES)   BK-MASTAN (HEM/ONC) 8E

May 11, 2011  9:00 AM (60 MINUTES)   BK-CHEMO NURSE

May 17, 2011  9:00 AM (60 MINUTES)   BK-MASTAN (HEM/ONC) 8E
   *** CANCELLED BY KHOKHLOVA,LYUBOV ***

May 24, 2011 10:00 AM (60 MINUTES)   BK-GU CYSTO NEW BLDG 1ST FLR
   *** CANCELLED BY FURNARI,MAUREEN E ***

Jun 03, 2011 10:00 AM (60 MINUTES)   SA-DENTAL MONOPOLI
```

Jun 06, 2011 11:00 AM (60 MINUTES)   SA-AUDIO/VALENTE
  *** CANCELLED BY ALLEN,ELIZABETH ANNMARIE ***

Jun 07, 2011 11:00 AM (60 MINUTES)   SA-AUDIO/VALENTE

Jun 14, 2011  9:30 AM (60 MINUTES)   BK-HEM/ONC KHOKHAR
  *** CANCELLED BY TURNER,RONALD ***

Jun 14, 2011 10:00 AM (60 MINUTES)   BK-PALLIATIVE CARE HIGGINS
  *** CANCELLED BY GRIMLEY,GEORGE ***

Jun 15, 2011  2:00 PM (30 MINUTES)   SA-EYE 1

Jun 16, 2011  8:30 AM (30 MINUTES)   SA-SPEECH/BROOKS

Jul 13, 2011  1:30 PM (30 MINUTES)   BK-PCT-E-OBASARE/PASQUARIELLO
  *** CANCELLED BY BURGESS,MARY J ***

**Roger W. Davenport M.D.**

**Practice Limited to Neurology**
445 77th Street
Brooklyn, New York 11209
[roger.davenport@verizon.net]

**Chief of Neurology**

**Lutheran Medical Center**
150 55th Street
Brooklyn, New York 11220

The Honorable Judge Irizarry
U.S. District Court of the Eastern District
New York, New York

Your honor, I am writing a letter of character for **Dominick Dionisio** who is to soon appear before you for sentencing. I am unaware of his legal situation other than the fact that he could be incarcerated and that concerns me greatly. I have cared for Dominick's brother Joseph Dionisio for many years. Joseph was originally seen in this office in the company of his mother who subsequently developed Alzheimer's and passed away. His care then fell to his brother Dominick and to Joseph's father who passed away recently due to a long-standing cardiac condition.

Joseph has a seizure disorder which is not completely controlled and he is also mildly mentally retarded. He cannot administer his own medications without supervision as he often forgets or becomes rebellious about taking his meds. He also cannot be left alone nor can he be expected to carry out necessary daily tasks without Dominick to watch over him and as such has become very dependent on Dominick whom he adores and who is the only person at this time capable of making Joseph do those tasks of daily life that protect his life. Having suffered through the early demise of his mother and his father, Joseph would be devastated and I fear would not do well if his brother were to be removed from his life for any period of time. Dominick's concern and care for his brother is exemplary and I often tell him so.

I would ask that this letter expressing my concerns be taken into consideration. It would be a significant hardship for Joseph to lose his brother Dominick after losing the parents who had protected him in his life.

With sincere regards,

Roger W. Davenport M.D.

20 January 2012

January 3, 2012


Dear Honorable Judge Dora L. Irizarry


      I am writing this letter to ask Your Honor to consider sentencing Dominick Dionisio to some alternative to incarceration.   I have known Dominick for over 20 years.  Since his release from prison he is a changed man.   Since his release he took on the role of caretaker to his now deceased father and his mentally challenged older brother.  His late father's end of life became a long and sad round of doctor visits, hospitalizations and discharges to his home.  As his father grew increasingly ill, Dominick kept a bedside vigil at night while still taking care of work obligations as well as meeting his brother's needs.  The death of Dominick's father left him the full-time caretaker of his brother Joseph who is now completely dependent on him.  Joseph cannot take care of himself.  Dominick is responsible for his brother's meals, medications, and making sure his hygienic needs are maintained.  He has to take his brother to numerous doctor appointments.  His brother would not have anyone to care for him and would become a Ward of the State should Dominick be sent to prison.

      Dominick has many responsibilities at this time.  He starts his day early and works nearly every day.  I am a self-employed business woman and a mother of three children, ages 7, and twins, age 4.  Since his release from prison, he and I have grown close and we plan on being married in the near future.  Since his release he has been a wonderful role model and friend to my children.  He offers assistance to me and has helped me raise my children for the past two years.  We have grown into a happy family. My own family members, some of whom had law enforcement careers, have grown to love and accept him as well.  My children have bonded with him and look to him for guidance.  He has been an emotional support to me as a parent and partner.   He instinctively knows what is needed by offering a kind and gentle word when things become difficult.

Dominick has become like family now.  He is a respectful and giving person.  I believe that he has rehabilitated and knows the value of being a loving family man as well as a contributing member of his community.   We love and need Dominick.  I pray that Your Honor will be lenient with him at his sentencing.   He has learned his lesson.


Very truly yours,


Ms. Carrie O'Toole