

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

NMA/JDG
F.#2004R02605

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 14, 2012

By ECF

The Honorable Dora L. Irizarry
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Dominick Dionisio
           Criminal Docket No. 04-1068 (S-1) (DLI)

Dear Judge Irizarry:

       The government respectfully submits this letter in connection with the defendant Dominick Dionisio's sentencing, which is scheduled for February 21, 2012.  On August 10, 2011, Dionisio waived indictment and pled guilty to a superseding information, charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), involving predicate acts of robbery conspiracy and robbery.

       In his sentencing submission, the defendant requests a non-incarceratory sentence based upon his family circumstances and post-incarceration rehabilitation.  (See Ltr. From James R. Froccaro, Jr., Esq. to the Court, dated Feb. 7, 2012 (Docket Entry No. 103) ("Def.'s Ltr.")).  For the reasons set forth below, the government does not oppose a non-Guidelines sentence, but respectfully submits that a sentence including a term of incarceration is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

The Honorable Dora L. Irizarry
February 14, 2012
Page 2

I.   The Applicable Sentencing Guidelines Range

As set forth in Pre-Sentence Investigation Report ("PSR") as amended by a January 13, 2012 addendum ("PSR Addendum") the Probation Department has determined that the defendant's total offense level under the is 28 and his Criminal History Category is IV, resulting in an advisory sentencing range under the United States Sentencing Guidelines ("Guidelines") of 110 to 137 months.  (PSR ¶ 109).[1]

There is considerable divergence between the government's estimate of the advisory Guidelines range applicable to the defendant – as set forth in the plea agreement between the parties executed on August 10, 2011 – and the Probation Department's determination.  (See PSR Addendum; Ltrs. From the Government to U.S. Probation Officer Lisa Langone dated December 16, 2012 and December 30, 2012).[2]  While there is certain divergence regarding offense level enhancements contained in the PSR calculation and not in the government's Guidelines estimate, the key difference is the determination of the appropriate criminal history category applicable to the defendant.  (See id.).  In any event, the government stands by its Guidelines estimate set forth in the parties' plea agreement – of a base offense level of 27 and determining that the defendant should be adjudicated within Criminal History Category I, resulting in a Guidelines sentencing range of 70 to 87 months.

---

[1]   Noting the differences between the parties regarding the appropriate criminal history category within which to sentence the defendant, see infra at 2, the PSR addendum presents an alternative Guidelines calculation premised on considering the defendant's prior racketeering conduct (i.e., the specific predicate acts in those two prior racketeering convictions) as relevant conduct for purposes of determining the defendant's base offense level.  This alternate calculation determines the defendant's base offense level as 32 and that he should be sentenced within Criminal History Category II, resulting in a sentencing range of 135 to 168 months.  (PSR Addendum at 8-18).

[2]   The government's letters submitted to the Probation Department setting forth objections to the PSR and responding to the defendant's PSR objections are attached to this letter.

The Honorable Dora L. Irizarry
February 14, 2012
Page 3

II. Consideration of Section 3553(a) Factors

      For the reasons set forth below, the government does not oppose a non-Guidelines sentence, but respectfully submits that a sentence including some term of incarceration is necessary to provide just punishment for the offense and for specific and general deterrence, pursuant to 18 U.S.C. § 3553(a).

    A. Legal Standard

      In United States v. Kimbrough, 552 U.S. 85 (2007), the Supreme Court reiterated that, "[w]hile rendering the Sentencing Guidelines advisory, United States v. Booker, 543 U.S. 220, 245 (2005), we have nevertheless preserved a key role for the Sentencing Commission . . . . [D]istrict courts must treat the Guidelines as 'the starting point and the initial benchmark,' Gall v. United States, 552 U.S. 38, 49 (2007)." 552 U.S. at 89. The Court further stated that "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Id. at 108 (quoting Rita v. United States, 551 U.S. 338, 350 (2007)); see also United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

      In Gall, the Supreme Court elucidated the proper procedure for sentencing courts to follow in considering whether to adhere to the applicable Guidelines range: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 552 U.S. at 49 (citation omitted). Next, a sentencing court should "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

    B. Nature and Circumstances of the Offense

      The charges in this case stem from the defendant's longstanding association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family") and specifically a crew of criminals run by Colombo family captain William "Wild Bill" Cutolo. In 1991, as an associate of Cutolo's crew, the defendant and others robbed an employee of the Magen David Yeshiva in

The Honorable Dora L. Irizarry
February 14, 2012
Page 4

Brooklyn of a bag containing cash and checks.  (PSR ¶ 13). Dionisio and another participant received several thousand dollars for their roles in the robbery.  (Id.).  In the fall of 1998, the defendant and two other Colombo family associates participated in the armed robbery of marijuana traffickers.  (Id. ¶¶ 14-16).  Dionisio and his co-conspirators stole approximately 1,000 to 1,200 pounds of marijuana, which they later sold.  (Id. ¶ 17).

Each of these crimes are serious, and furthermore were carried out in furtherance of a violent criminal organization, of which this defendant was a loyal associate at the time. Additionally, these crimes were inherently dangerous, involving robbery through the use of physical force and firearms. Accordingly, the nature and circumstances of the offense weigh in favor of a sentence that includes a term of incarceration for the purposes of reflecting the seriousness of the offense and promoting respect for the law and general and specific deterrence.  See 18 U.S.C. § 3553(a)(1), (a)(2).

C.   History and Characteristics of the Defendant

At the time of the charged conduct, the defendant was a Colombo family associate assigned to the Cutolo crew.  Since that time, the defendant has twice been convicted of racketeering for criminal acts carried out in time periods that overlap with the conduct alleged in the above-captioned superseding information. The defendant has served over seven years in prison as a result of these convictions.  (PSR ¶ 55).  In addition, the government has no evidence to suggest that the defendant has rekindled his association with the Colombo family since his release from prison.

Moreover, the government does not dispute the unfortunate family circumstances described by the defendant, including the premature deaths of his mother and father, as well as his brother's serious medical condition.  (See Def.'s Ltr. at 10-11).  The government finds no reason to discredit his representation that he is the sole provider for his severely disabled brother.

The government respectfully submits that history and characteristics of the defendant weigh in favor of a significant departure from the applicable advisory Guidelines range.

The Honorable Dora L. Irizarry
February 14, 2012
Page 5

    D.    The Need for the Sentence Imposed

This Court is well acquainted with the danger that organized crime presents to our community. Here, the defendant is charged with acts of violence: robberies of people who were involved in crime themselves as well as another who was an innocent civilian. Such crimes are just one way Cosa Nostra associates earn illegal proceeds for the crime family and ingratiate themselves to those in positions of authority in the crime family. For this reason, as well as in light of the very nature of the crimes themselves, there is a need for the sentence imposed to promote respect for the law and to deter not only this defendant, but other prospective organized crime defendants, from engaging in these types of crimes. See 18 U.S.C. § 3553(a)(1), (a)(2).

III. Conclusion

For the foregoing reasons, the government respectfully submits that the Court should impose a sentence which includes a term of incarceration.

                          Respectfully submitted,

                          LORETTA E. LYNCH
                          United States Attorney

                 By:     /S
                      Nicole M. Argentieri
                      James D. Gatta
                      Assistant U.S. Attorneys

cc:   James R. Froccaro, Jr., Esq. (by ECF)
       U.S. Probation Officer Lisa A. Langone (by e-mail)